Chief Justice Marshall
delivered the opinion of the Court.
This petition was filed by a woman of color, by name Delphia Jackson, suing as a free person, asserting rights as sole heir of her mother, Jemima Clark, a free woman of color, by whom the plaintiff had been purchased, and was emancipated by deed, dated in October, 1850, as well as by the codicil of *217 her will, made in September, 1851. The will itself, dated in 1839, was proved and admitted to record in 1854. The will which is referred to, and is a part of the record, appoints Willis Collins executor, and Mary P. Collins, his wife, executrix, and directs them to sell certain described property, being an undivided half of a house in Winchester, and to hold the proceeds in trust for the two daughters of the testatrix, by name Caty and Delphia, and to dispose of any other property of which she should die possessed in the same way, provided that if either of the daughters should die without children, her portion should go to the survivor; and, on the death of the daughters, the children of each to have their mother’s portion. If the daughters and their children should die without issue, then, and in that case, the testatrix wills and bequeathes whatever she may possess to the children of Mrs. Mary P. Collins, her executrix, to be equally divided between them. By a codicil, dated in September, 1851, the testatrix recites her purchase of Delphia, and gives to two grand-sons, Billy and Ellick, sons of her son Robin, instead of to her daughter Delphia, one-half of the property mentioned in the will, and of any other property she may possess at her death, except her daughter Delphia, who is to be then free ; and directs that the property given to her two grand-sons be held in trust, &c., as in the will.
The petition states that all the devisees named in the will, except the children of Mrs. Collins, are slaves, and that the contingency on which the devise to these children is to take effect cannot reasonably occur, as the plaintiff herself has children, and as she leaves grand-children; that Mrs. Collins is dead, leaving but two children who are defendants; that the plaintiff is in possession of the house mentioned in the will, which, together with all her other property, she claims as the sole heir of her mother; that she desires to retain the house as a home, and does not wish it to be sold, but that Collins, the executor, *218 is now proceeding to sell it, and has advertised a sale, &c.; and she asks for an injunction against the sale. •
1. The 10th article of the present constitution of Kentucky, which took effect in June, 1850, so far as it prescribed that laws should be passed to prevent the emancipation of slaves to remain in the state, was not effectual of itself to prevent owners from emaneipating their slaves, until the legislature passed laws to that effect; and a deed of emancipation ex ecuted after the constitution went into effect, before the passage of such act by the legisla^dér’the Vpro^ visions of the
*218 A demurrer to the petition was sustained, and the petition dismissed on the ground, as appears from the decree, that as the 10th article of the present constitution, among other things, requires the Legislature to pass laws to permit slaves to be emancipated by the owners, “and to prevent them from remaining in this state after they are emancipated,” took effect as a part of the constitution in June, 1850, before the date of the deed of emancipation by which the plaintiff claims her freedom, that deed and the emancipation declared by it is subject to the operation of the legislative act, passed after its execution, which is referred to as contained in the Revised Statute, page 643, 4, which makes removal from the state a condition of emancipation, and declares that until such removal, the absolute right to freedom shall not vest.
The law existing before the adoption of the present constitution, authorized emancipation without any such condition; and, if that authority, as given by the previous law, (the act of 1798,) was not wholly abrogated, the deed of emancipation, made in pursuance of the prior law, and before the passage of any statute intended to carry the constitutional mandate into effect, and before, in fact, there was any opportunity for the passage of such a law, must, in our opinion, be effectual, except so far as the constitution itself either made it ineffectual, or subjected it to future legislation, by which its eflicacy has been impaired. But it is admitted, and is entirely clear, that the constitutional provision referred to does not itself impose any condition upon emancipation. It does not by its own force and operation attach upon individuals — either the emancipated or the emancipators. It is a mandate to the Legislature, and dependent upon the action of that body to give it effect. It does not declare that all future acts of emancipation shall *219 have no effect until removal, nor even requii’e the Legislature so to enact. It requires the passage of a law or laws to prevent emancipated slaves from remaining in the state after their emancipation.— And the subsequent enactment, declaring that the act of emancipation shall not confer absolute freedom on the slave, until he or she is removed from the state, though, as a means of preventing their remaining in the state, it is allowed by the constitution, is certainly not expressly commanded by it. And in fact a previous statute had been enacted for the purpose of carrying out this provision by compelling emancipated slaves to leave the state and not return to it, under pain of being convicted and punished as felons, but without declaring the act of emancipation void, or suspending its effect.
2. The right s°aTes^o" befng taken away by t.he present eon-station until the right remained unafislation11*1 took ptb® son emancipa- ^ ^tate^was n,ot affecfcccl: as the previous laws on that sub-p^ied^by^the constitution but expressly con-tinned in force.
The constitution does not itself establish a principle which shall be operative from its own date, but at most establishes a principle for future legislative action, and tobe effectuated by future laws; and that principle is not that future emancipation shall depend upon removal, but that-slaves to be afterwards emancipated under the required legislation should in some mode be prevented from remaining in the state.
By the terms of the constitutional provision, legislation was necessary as well for permitting emancipation, as for preventing the slaves who might be . , „ .... TT , , emancipated from remaining in the state. Had there been no previous and continued statute giving authority to emancipate, there could have been no legal emancipation under this constitution, until the legislature should act upon the subj ect; and as the previous law imposed no condition as to removing from the state, and the constitution itself imposed none, it follows either that there was no right to emancipate . r between the adoption of the constitution and the subsequent legislation on the subject, or that the right existed as under the former law, and without condi- . , .11 . _ . tion as to removal. If the right thus remained, it *220 seems to us that any act of emancipation done in virtue of it, after the adoption of the constitution, but before any legislation under it remained unaffected by such subsequent legislation, just as if the emancipation had taken place before the adoption of the constitution. For it would in fact have taken place before this provision became effectual by subsequent legislation. The subsequent legislation does not profess to be retrospective. The constitution does not require it to be so. Upon ordinary and just principles of construction it should be understood as being prospective only. And there is, in our view, no more reason, independently of the prohibition of ex post facto laws, for making the condition of removal prescribed by the Revised Statutes apply to an emancipation, evidenced by deed made before the date of that statute, than there is for making the punishments prescribed by the intermediate statute apply to the person emancipated before its enactment.
3. The present constitution of Ky., which went into operation in June, 1850, did not, by its own force, operate to prevent the unconditional emancipation of slaves, nor repeal any existing law giving that right.
It has not, so far as we know, been suggested that there was no existing right of emancipation after the adoption of the present constitution, until it was permitted by subsequent statute. If there was such right, it was because the constitution did not ipso facto repeal the previous law which gave and regulated it. And we are of opinion, that although the constitution prescribed future legislation which would be inconsistent with the unconditional right of emancipation, it neither abrogated the right, nor repealed the law which gave it, though it required the right and the law to be modified by the Legislature. The 1st sec. of the schedule, a part of, and appended to the constitution, and of equal authority with any other portion of it, expressly continues in force all laws of the state not inconsistent with the constitution. And although the law to be enacted under the mandate of this constitution would be inconsistent with the former law, yet as the former law, so far as it permits emancipation, is clearly consistent *221 with the constitution, and as that instrument itself makes no change in the form of the effect of emancipation, or the right acquired thereby, we are of opinion that the former law is not repealed by repugnance to the constitution, and that not being inconsistent with it, the schedule expressly applies to and saves it. Whence it follows, that in our opinion the plaintiff is free, and has a right to sue.
4. The bastard child of a free person of color is heir to the mother.
5. A devise vas made to slaves, who could not take, and a devise over to others in case the first devisees die without issue: held that the first devisees being incapable of taking, being slaves, that the devise over was void, and that the heir-at-law must take.
The question, however, still remains whether her petition shows any cause of action or ground of suit; and this question is no more free from difficulty than that which has been just decided with respect to her right of freedom. As she was free at her mother’s death, and then capable of being an heir, and as, although regarded in law as a bastard, she might inherit from her mother, we are of opinion that notwithstanding the former state of slavery of herself and her mother, she is entitled as sole heir and distributee to such estate owned by her mother at the time of her death as is not disposed of by valid devise or bequest.
At the date of the will all the devisees and beneficiaries therein, except the children of Mrs. Collins, were slaves, and with the exception of the plaintiff— afterwards emancipated — they are still slaves. The two grand-sons of the testatrix, substituted by the codicil to the place of the plaintiff, and to the benefit originally intended for her, were at its date and still are slaves. The plaintiff being, by the effect of the deed of emancipation, free at the death of the testratrix, when the will speaks and takes effect, she was then capable of taking by devise or bequest, or by descent as heir to her mother. But all the other children and grand-children of the testatrix, the intended beneficiaries, being then slaves, the provisions of the will and codicil are wholly inoperative to confer any benefit or right upon them or any of them. If the codicil is void as to the benefit intended for the children of Robin, is yet, by giving to them instead of the plaintiff one half of the property, effectual as *222 a revocation of the devise of that half to the plaintiff, and operates to put her out of the will, then she is entitled to nothing under the will. But she is the only heir of the testatrix, and the sole question is whether, because all the interests wffiich the will intended to create and to prefer to that of the children of Mrs. Collins are, ab initio, void, by reason of the incapacity of the intended beneficiaries, that interest, though by the terms of its creation it is contingent and ulterior, is to become absolute and immediate, and thus to preclude and forever defeat the claims of the heir; or whether it shall await the contingency on which, by the will, it is made to depend, leaving the property to pass until the contingency happens, as if there were no will. There might, indeed, be some question whether the testatrix intended to give the property to the children of Mrs. Collins in any other event than that of the death of her own daughters, (Caty and Delphia,) and of their children, without issue before her own death, since, upon the failure of issue described, she gives to the children of Mrs. Collins whatever she, (the testatrix,) may possess; which naturally refers to the time of her death, and not to a subsequent period, before the arrival of which her property might, under the previous clauses of the will, be greatly diminished. But we waive this question, because the answer whether affirmative or negative, though it might determine the extent of the plaintiff’s interest, if she has any, would still leave its existence or non-existence dependent on the same inquiry which was before stated. It could not possibly be more certain that the testatrix did not intend the contingent interest to take effect unless her daughters, and their children should die without issue in her lifetime, than it is that she did not intend it to take effect until there should be such failure of issue at some period. And as upon either construction the contingency has not happened, the difference between them is, that according to one construction it never can happen, but according *223 to the other it may happen, and is in fact in suspense, so long as either of the daughters, or any of their children, are living. There is no doubt as to what was the intention of the testratix in the contingency described, and which certainly has not yet happened; nor is there any doubt as to her intention if the contingency never happens, or until it does happen. The real question is, whether in violation of that intention the ulterior or postponed interest can be brought forward and made to take effect immediately and to the disinherison of the heir, before the happening of the contingency. In general, he who claims under a will must claim according to the will, and not in violation of it. And although if a particular estate be given to A for life, with remainder to B, the remainder being vested will take effect in possession, whenever the particular estate is out of the way, though in the lifetime of A, yet if the remainder be contingent, it can never take effect until the happening of the contingency ; and by the common law the previous destruction or limitation of the particular estate, instead of bringing the remainder prematurely into effect defeated it altogether.
6. In case there be an ex-ecutory devise, to take effect upon the death of a particular person without issue, the ulterior devise having no connection with, or dependence upon the previous interest, but depending upon a contingency, which may or may not terminate a previous interest created by the will — ■ held, that the executory devise could not take effect until the contingency occur, tho’ the first interest could not take effect because of the incapacity of the devisee to take, and that the heir-at-law should take.
*223 This will, however, in the devise or bequest to the children of Mrs. Collins, presents not the case of a remainder, to take effect after the termination of a particular estate, but of an executory devise, to take effect upon the contingency of the death of two named persons, and their children without issue. In the nature of an executory devise, this ulterior interest has no connection with, or dependence upon the previous interest, but depends wholly upon the contingency, which may or may not terminate a previous interest created by the same instrument. And although in the present case the same contingency which is to give effect to the executory devise, also terminates, according to the original will, a previous interest created by the same will, this circumstance does not make the one dependent on the other. An executory devise may, unlike a remainder, be valid *224 and take effect without any partial estate or interest to precede, and in the language applicable to remainders, to support it; and as it may take effect upon the happening of the contingency, though the preceding estate or interest may have previously ceased from some other cause, so it seems to us that it must always wait for the contingency, and cannot take effect before that occurs, whether the estate or interest intended to precede it or to be substituted by it be void, ab initio, or cease or become void otherwise than by the contingency, and before its occurrence.
If it be said that by giving to the children of Mrs. Collins, if the prior devisees should die without issue, the property first given to them, the testatrix shows that these ulterior devisees were the next objects of her bounty, and that the first being incapable, the next should take the benefit intended for the first; it is still obvious that she did not intend the ulterior devisees to take, so long as the primary devisees should live, nor until they should die leaving no issue. And although their incapacity to take under the will defeats her intention to benefit them, this does not seem to be a sufficient ground for abrogating or disregarding the manifest intention that the ulterior devisees shall not take until the contingency happens.
It may be assumed that the testatrix did not know that her children and grand- children could take nothing under her will. She intended and expected that they should take at her death the property given to them, and that the children of Mrs. Collins should only take in the event that the children and grandchildren should die without issue. This is not like the case of the death of a devisee in the lifetime of the testator, in which case, if there be a further disposition of the subject, that disposition, by the general law, takes effect not against but according to the will of the testator, who, by the further disposition, provides, in effect, for the event which may *225 have defeated his preference. Here the ulterior disposition is intended to provide, not for the incapacity of the first devisees, or for the failure of the devise on account of their disability, but only for the contingency of their death without issue. It is to be observed, too, that if the plaintiff is displaced from the will by the.codicil, the contingency still being the death of herself and sister and their children, without issue, there is no connection between the contingency and the devisees who are to take her share. And as the plaintiff and her children might be the last survivors of the persons referred to in the contingency, and would still be entitled to nothing under the will and codicil, even if they were effectual according to their own terms, it might be, that the contingency would have no relation to any person whose estate under the will would be divested by its happening. And as this is certainly the case with regard to that half of the estate devised to the grandsons by the codicil, and might be the case with regard to the other half devised to the daughter Caty and her children by the will, we think that even upon the face of the will and codicil the devise over to the children of Mrs. Collins may be regarded as in effect the same as if made upon the contingency of the death, without issue, of persons to whom nothing had been given by the will, and who could not take anything under it. Though A and B may both be strangers to a testator’s blood, he has power, by his will, to give his estate to B in case he should survive A, or in case A should die without issue ; and however inexplicable the motive for referring to such a contingency might be, when A neither had the estate nor could take it by implication, we suppose the validity of the contingency and subsequent devise could not be questioned; and that although the person referred to therein could take nothing by the will or by descent from the testator, the devise over could not take effect until the happening of the contingency. And why should it not be so in the pres *226 ent case ? If it were true that none of the persons whose death without issue is made the contingency can take by the will, is it not the same as if there was nothing given to them ? And must not the happening of the contingency, as described, be in this as in other cases, the sole condition upon which the devise over can take effect ?
Again: suppose a testator to devise that if A, (who is his sole heir, but to whom nothing is given by the will,) should die without issue, B shall have his estate, the same not being otherwise disposed of, A would take the estate as heir, and B would take it upon the happening of the contingency and not before. And the effect would certainly be the same, though the contingency embraced the death without issue, not only of A but also of other persons named with him, and although they might be incapable of taking anything, either as devisees or heirs of anybody. Or suppose the testator, after making a devise which is wholly void, devises the estate over upon the contingency of the death, without issue of A, (his only heir,) or of A and others capable or incapable of being heirs or devisees. The voidness of the primary devises would certainly not affect the validity of the contingency, and if the incapacity of all the persons named in it might make it void, (which we do not admit,) certainly the capacity of A, the heir, would sustain it, though all the others should be incapable. And it seems impossible that its validity should be affected by the fact that the incapable persons named in the contingency had themselves been the primary devisees. But the plaintiff is the sole heir of the testatrix. And if the contingency would have been void, in case it had referred to none others but slaves, (which is not admitted,) it seems to us that the capacity of the plaintiff to take, .both as heir and devisee, and the fact that she is the sole heir, must suffice to make it valid, and that being -valid, and the express condition on which alone the •.ultimate devise is to take effect, it must avail to post *227 pone that devise, so that it cannot by any construction take effect until the happening of the contingency on which it is made to depend. If the contingency were even void, we do not perceive how that would help the devise to which the happening of the contingency is, in terms, a condition precedent, and which can, in no other way, become effectual, according to the will. Nor, indeed, do we perceive how a contingency, which, in the nature of things, may happen, and which involves no illegal or immoral act or intention, can be deemed void.
Conceding, then, that the primary devises are all void in consequence of the incapacity of the devisees, does that voidness operate for the benefit of the heir until the contingency shall happen, on which the ulterior devise depends, or shall it operate to the benefit of the ulterior devisees, by giving immediate effect to their interest, which the will expressly postpones till the happening of the contingency ? These devisees have no claim or interest in the estate, but that which the will gives them. The will gives them none but upon the contingency described. As that is the only condition on which they are let into the estate, the intention is to exclude them, unless and until the condition happens. It is true the intention also is to exclude the heir, and if the will were effectual, and so far as it is so, it does exclude him. But the heir has a different title. He can claim against the will, and whatever is not devised is his; and as the devises to the slaves in this will are void, there seems to be reason as well as justice in saying that the interest, which is, in words, given to them, being in effect undevised, shall go to the heir as if it were blotted out of the will, rather than that by an artificial construction the ultimate devisees, who were intended to have nothing until the happening of a designated contingency, shall, before that has happened, take immediately, to the exclusion of the heir,, all that was intended for the preferred devisees.
*228 Upon the question, as here presented, we find no direct authority, but there is a strong analogy in those cases in which the question has arisen between the heir and the residuary devisee or legatee, as to the right to the benefit of a void bequest of the proceeds of real estate bequeathed to a charity. Upon that question the weight of authority seems to be in favor of the heir. (1 Jarmanon Wills, 5th ed., page 303, 309.) The same preference is established by the 20th section of the Revised Statutes upon wills, (Revised Statutes, page 696,) which enacts, in substance, that in case any devise in a will be void, or cannot take effect, and there be a residuary devisee, the estate embraced in the void devise shall, unless a contrary intention appear by the will, go to the heir and not to the residuary devisee. If, therefore, the devise to the children of Mrs. Collins had been residuary instead of contingent and executory, there would have been strong ground even on the score of judicial authority for determining in favor of the heir, and such a determination would be peremptorily required by the statute, which must be regarded as being founded upon deliberate views of justice and policy; and as furnishing, therefore, strong evidence of the requirements of both. And yet in the case supposed, as in the one actually before us, the first devisees being incapable, the devises to them would be void, the residuary devisees would be as certainly the next objects of the bounty of the testatrix, and upon the whole will, the only objects capable of receiving and' enjoying it, and their right 'would not, as in this case, depend, by the terms of the gift, upon an extraneous contingency which might never happen; nor would it be any more certain that they were not intended to take that which was devised to others, incapable of taking, than it is now that they were not intended to take it before the happening of the contingency on which it was devised to them. The interest intended to be given by the void devises in this will is the whole estate, or *229 the profits of the whole from the death of the testatrix until the happening of the contingency. It is a fee defeasible by the happening of a designated event, on which the estate is devised over. From this defeasible fee, the intention of the testatrix excludes the ultimate devisees; and upon the principles of the statute, and of the authority referred to, that defeasible interest goes to the heir. But if upon scrutinizing the nature of the contingency it appears to be too remote, as not being limited to a life or lives in being, and twenty-one years afterwards, the consequence is that the devise over is void, and the interest first given is absolute and free from condition. And in this view, which we deem correct, the heir would be entitled to the absolute interest in the entire estate, to the exclusion of the contingent devisees, the devise to whom is upon the face of the will void.
It is sufficient, however, for sustaining the petition on demurrer, that the plaintiff has at least the defeasible interest intended to have been given to the primary devisees in the will and codicil, and especially with the allegation, which shows the great improbability that the contingency ever will happen; nor is it certain ,tha£ the void devise to the children of Robin revokes the gift to the plaintiff. Under any aspect of the case, as presented by the petition, we are of opinion that the plaintiff has at least a prima facie right to the relief sought, orto some relief;- and that the court erred in sustaining the demurrer and dismissing the’petition-.'
Wherefore, the decree is reversed, and the cause remanded, with directions to overrule the demurrer, and for further proceedings.