EDMUND B. McCULLY et al., appellants,

*v.*

JOHN B. WARRICK, respondent.

[Filed July 10th, 1900.]

Section 6 of the Orphans Court act provides that the personal estate of an illegitimate person, dying intestate unmarried and without issue, shall go to and be paid over to the mother of such illegitimate. *Held*, that if the illegitimate person outlives his mother, neither his brothers or sisters by such mother, nor their issue, will take his estate.

On appeal from the Burlington orphans court.

*Mr. Charles I. Wooster,* proctor, and *Mr. John J. Crandall,* of counsel for the appellants.

*Mr. Mark R. Sooy,* proctor and of counsel for the respondent.

REED, VICE-ORDINARY.

This appeal is from a decree of the Burlington orphans court distributing the estate of Isaac Warrick, deceased, who died intestate.

The primary question involved in the trial below was the legitimacy of the intestate. He was the son of Anthony Warrick and Sarah Warrick (*nee* French), who had entered into the ceremony of marriage on September 30th, 1815.

Sarah French had previously, on December 26th, 1812, entered into a ceremony of marriage with one Josiah Boud. Boud was still living at the date of her subsequent marriage to Anthony Warrick, and, so far as appears, undivorced from her. By Boud she had one child, Elizabeth Boud, who married Joseph B. McCully. By him she had the five appellants. The appellants claim that, inasmuch as Sarah French was already married to Josiah Boud, who was still living, with no evidence of their having been divorced, her marriage with Anthony Warrick was a nullity, and that the children born to her from her marriage with Warrick were bastards.

The principal reply to this contention, made by the appellees, who are the descendants of Anthony Warrick and Sarah, is that Josiah Boud was a married man at the time he entered into his pretended marriage with Sarah French, and that therefore the ceremony was a nullity, and she was free to marry Anthony Warrick. The woman to whom it is claimed Josiah Boud was married was one Helena Barkalow. The proof of that marriage occurring, as it did, if at all, nearly a century ago, in the absence of a record of the ceremony, is dependent necessarily upon declarations of deceased members of the family.

Nice questions were presented, both as to the competency of the declarations of the witnesses, who were variously related to the intestate as well as to Josiah Boud, and as to the probative force of such testimony.

The orphans court found that Josiah Boud was already married to Helena Barkalow when he pretended to marry Sarah French.    The consequence of such finding was that Elizabeth, the child of the connection between Josiah Boud and Sarah French, was illegitimate, and the marriage to Anthony Warrick was regular, and so Isaac Warrick was their legitimate son. This being so, the estate of Isaac was distributed to his next of kin, the Warricks.

But the appellees challenge the right of the appellants to prosecute this appeal, on the ground that they are not aggrieved by the decree of the orphans court.    They insist that, conceding all that appellants claim, namely, that Isaac Warrick was illegitimate, and that the appellants' mother was the legitimate child of Sarah, nevertheless the appellants can claim no part of the intestate's estate, and therefore they have no interest in the determination of the orphans court, however erroneous.

At the outset, then, it is necessary to ascertain whether the appellants have a footing at all in this court to challenge the correctness of the decree.

It is perceived that any right of the children of Elizabeth to the property of Isaac Warrick must be traced through Sarah, their grandmother, the mother of the alleged bastard intestate. At common law Isaac Warrick, being *nullius filius,* neither his natural mother nor any of her descendants could claim any kinship with him, and this was the common law of this state.    *2 Kent. Com. 216.*

But it is claimed that this rule has been changed by legislation, to be found in the fifth and sixth sections of the Orphans Court act ( *Gen. Stat. p. 2390* ), and that it has been so changed that collaterals can inherit through the ancestry of the bastard, as if the bastard was completely legitimated.    The language of section 5 is:

"If the mother of any illegitimate child or children shall die without leaving a husband surviving her, and leaving no lawful issue, or the issue of any, then the surplusage of her goods, chattels and personal estate shall be paid to her illegitimate child or children."

Section 6 is:

"The whole surplusage of the goods, chattels and personal estate of any illegitimate person, who shall die intestate and unmarried and leaving no lawful issue, or the issue of any him or her surviving, shall go to and be paid over to the mother of such illegitimate person."

It is claimed that inasmuch as by the sixth section, if Sarah Warrick had survived Isaac, his personal estate would have gone to her, therefore, she having already died, it will go to her next of kin, as her representatives.

These statutes effect a radical change in, and are in derogation of, the common law rule controlling inheritance. It is manifest that the words of the act confer no transmissible inheritable qualities, either upon the son or the mother. The express words of the statute are that if such illegitimate son die without lawful issue, his estate shall be paid over to the mother. The statute stops there. It makes no provision for payment to any other person or for any representation of the mother in case of her death. A construction which would make her the medium through whom her kin could inherit from her bastard son would be to read into the statute words which no rule of construction, however liberal, would, in my judgment, countenance. The purpose of the statute is to abate the rigor of the rule of the common law in respect to bastards. But the construction for which the appellants contend would operate to continue the exclusion of all natural brothers and sisters of the whole blood of Isaac from any participation in his estate, while it would confer all his estate upon the children of his half sister, Elizabeth. This result, in my judgment, is unwarranted by the statutory language.

The proctor of the appellants cites a number of cases in which it was held that, under statutory provision respecting descent or distribution to and from bastards, a brother, sister or other collateral could take. But the statutes which have received this construction have been radically different from ours. *Garland* v. *Harrison, 8 Leigh 368; Hepburn* v. *Dundas, 13 Gratt. 219,* are constructions of the Virginia statute of 1785. The language of this statute is:

"Bastards shall be capable of inheriting or transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother."

The construction contained in the opinions in these cases was in opposition to that of Mr. Justice Washington, in *Stevenson* v. *Sullivant, 5 Wheat. 207,* who held that the act did not create the relation of brothers and sisters between children of the same mother so as to enable them to inherit from each other. *Lewis* v. *Eutsler, 4 Ohio St. 354,* is a construction of the same statute re-enacted in Ohio, and *Briggs* v. *Greene, 10 R. I. 496,* of the same statute re-enacted in Rhode Island.

The cases of *Slover* v. *Boswell, 3 Dana 233,* and *Jackson* v. *Collins, 16 B. Mon. 214,* were also constructions of a similar statute enacted in Kentucky. But the last two cases do not support the theory of collateral inheritance through the mother of the bastard, even under the terms of that statute.

Other Kentucky cases, namely, *Allen* v. *Ramsey, 1 Metc. (Ky.) 635; Jackson* v. *Jackson, 78 Ky. 390,* and *Croan* v. *Phelps, 94 Ky. 213,* hold that the statute did not provide for the transmission of the estate of the bastard through his mother to his collateral kindred, nor for his reception of the estate of his dead mother's brother, nor for his inheritance, with his mother, from her ancestors.

This Virginia act appears also in the legislation of Florida and Missouri. In *Williams* v. *Kimball, 35 Fla. 49,* it was held that the statute legitimated the bastard only as to his mother, and not in respect of her kindred, and that the bastard could not take from her collateral. A similar strict construction was put upon the act in the case of *Bents, Administrator,* v. *St. Vrain, 30 Mo. 268.*

Of the other statutes which have been construed in the cited cases none is like ours. For instance, the statutes construed in the cases of *Huston* v. *Davidson, 45 Ga. 574,* and in *Alexander's Administrators* v. *Alexander, 31 Ala. 243,* provided, in express terms, that bastard children may inherit from each other.

In *Opdyke's Appeal, 49 Pa. St. 373,* cited by the appellants, the court, in holding that illegitimate shared with legitimate children the estate of their mother, merely gave the words of

the act of 1855 their natural force. The act provided that mother and son should inherit from each other as heirs and next of kin, and transmit the same according to the intestate laws of the state.

Under this statute it was held, in *Grubb's Appeal, 58 Pa. St. 55,* that the act should be strictly construed, and that the kindred of the mother of a bastard could not take the estate of a deceased bastard as next of kin of her deceased mother. In *Steckel's Appeal, 64 Pa. St. 493,* that where a bastard died before his mother, he could not transmit a right from her to his children. And in *Woltmate's Appeal, 86 Pa. St. 219,* that the statute did not enable illegitimate children of the same mother to inherit from each other.

A statute of Tennessee provided that if a woman died intestate, leaving a natural born child or children, such natural born child or children shall take as heir to the mother; and in case of intestacy without issue, the brothers and sisters of such natural born child or children shall inherit from him or them.

The supreme court of Tennessee, in *Brown* v. *Kerby, 9 Humph. 460,* held that a bastard could not take his mother's share of the grandmother's estate, she being dead. The court said that the statute made the bastard the heir and distributee of the mother, but extends its right no further, and that the child could inherit no estate under its provisions from the relatives, lineal or collateral, of the mother.

In *McGuire* v. *Brown, 41 Iowa 650,* under a statute providing that illegitimate children shall inherit from their mother, and the mother from the children, the supreme court of Iowa held that the children of the same father would inherit from each other. This construction, however, was reached by giving force to section 2497 of the code which provided that their share was to be disposed of under this section in the same manner as if they or either of them had outlived the intestate and died in possession and ownership of the property thus falling to their share.

It was correctly argued that the mother, if she had outlived the intestate, would have taken, and by force of the express pro-

vision of section 2497 of the statute it had to descend as if she had outlived him.

In *Bacon* v. *McBride, 32 Vt. 585,* Chief-Justice Redfield, disapproving the case of *Burlington* v. *Fosby, 6 Vt. 83,* held that under a statute providing that "bastards shall be capable of inheriting and transmitting inheritance on the part of the mother," illegitimate children do not inherit from legitimate children of the same mother.

Construing a statute of Massachusetts, which provided that an illegitimate child shall be considered as heir of his mother, and shall inherit her estate, in like manner as if he had been born in lawful wedlock, the supreme court, in *Curtis* v. *Hewins, 11 Metc. 294,* excluded the bastard's children from the estate of his mother where he had died in her lifetime. .

The general sentiment exhibited by these decisions is that these statutes should receive a strict construction and that the extent of the statutory change from the rules of the common law must be clearly defined.

The legislature in this state has said the personal estate of a bastard dying without leaving a will, wife or child, shall go to and be paid over to his mother. That is all that is said.

It is not conceivable that the legislature, if it had thought of the collateral inheritance of this property through the mother, would not have provided for it, and have done so in a way that would have let the bastard's illegitimate brothers and sisters share in the distribution.

The appellants, in my judgment, can claim nothing through. the mother of the intestate, whether he was legitimate or illegitimate, and therefore they are not aggrieved and their appeal should be dismissed.