8943

TROUT v. BURNETT *ET AL.*

(83 S. E. 684.)

DISTRIBUTIONS OF ESTATES.   HEIRS.   ILLEGITIMATES.

BASTARDS—INHERITANCE FROM—STATUTORY PROVISIONS—"HEIR AT LAW."
—Under Civil Code 1912, sec. 3562, which was enacted in 1906, and
which provides that any illegitimate child whose mother shall die
intestate shall, so far as her property is concerned, be an heir at
law as to such property, the children of an illegitimate child who
died prior to 1906 were heirs of their grandmother, the mother of
the illegitimate child, who died subsequent to 1906; as the act is
remedial, and so construed is not retrospective, since it looks for-
ward to the time when the distribution of the intestate's estate is
to be made, especially in view of section 3555, providing that the
lineal descendants of an "estate" (intestate) shall represent their
respective parents and take among them the share or shares to which
their parents would have been entitled had such parents survived
the intestate, and, moreover, the legislature in using the technical
term "heir at law" must have intended to invest the illegitimate
children with inheritable blood such as other heirs at law possess

Before SHIPP, J., Spartanburg, April, 1914.   Reversed.

Action by J. W. Trout, plaintiff-respondent, against
Stanley Burnett, Flavius Burnett, Joyce Burnett, Ruby
Burnett and Eleanor Burnett, defendants-respondents,
and Iris Wilson, Ralph McMillan and Nannie McMillan,
defendants-appellants.   The facts are stated in the master's
report, which is as follows:

"Mrs. Nancy D. McClure died intestate in 1910, seized
and possessed of a tract of 88 acres of land, about eight
miles north of the city of Spartanburg, and owning a small
personal estate.   This suit is brought by plaintiff, her eldest
son, for the partition and division of her property.

"Mrs. McClure was first married to a man named Trout,
and the plaintiff was the only child by the first marriage.
After the death of her first husband, her second child, Ella,

FOOTNOTE.—See note on right of illegitimate to inherit from or through
mother in Ann. Cas. 1914d, 577.

was born out of wedlock. This child, Ella, familiarly known as 'Babe,' was married to R. R. McMillan. To them were born three children, viz.: Iris McMillan (now Wilson), Ralph McMillan and Nannie McMillan. Ella McMillan died some years ago—previous to 1906—leaving her husband and children surviving her. After the birth of Ella, Mrs. Trout was married to a man named Burnett, and to them was born one child, Otis L. Burnett, who died in 1908, leaving five children, viz.: Stanley, Flavius, Joyce, Ruby and Eleanor Burnett. After the death of Mr. Burnett, Mrs. Burnett married a man by the name of McClure, in 1893, who died about 1903. During her lifetime Mrs. Nancy D. McClure conveyed certain property to her son, Otis L. Burnett, which plaintiff alleges to have been in the nature of advancements. During the latter years of her life the management of her property was in the hands of her eldest son, the plaintiff, who is to account for his handling of such property. These two questions will be considered last in this report. I shall first address myself to the principal question arising herein, viz.: Are the children of Ella McMillan heirs at law of their grandmother, Mrs. Nancy D. McClure? Are they entitled to represent their mother, Ella McMillan, and to take among them the share to which she would have been entitled if she had survived the intestate, Mrs. Nancy D. McClure?

"Section 3562, vol. I, Code of 1912, is (in part) as follows:

"'Any illegitimate child * * * whose mother shall die intestate, possessed of any real or personal property, shall be, so far as said property is concerned, an heir * * * at law as to said property, notwithstanding any law or usage to the contrary.'

"This is the act of 1906 (XXV Stats. 156), and was enacted after the death of Ella McMillan, the illegitimate child, but before the death of Nancy D. McClure, her

mother. Can the legitimate children of Ella McMillan share in the distribution of the estate of their grandmother?

"The act is an enabling and remedial statute, affecting the rights of those who have heretofore been under the ban of law, and giving a remedy where none existed before. In such cases it is to be presumed that the legislature intended the most beneficial construction of the act consistent with a proper regard for the ordinary canons of construction. Before the passage of this act illegitimate children could not inherit; a bastard was said to be *nullius filius.* It would seem that the illegitimate child was not allowed to inherit for two reasons: (1) In order that a penalty might be inflicted for wrongdoing (the penalty here falling upon the only innocent person concerned in the committing of the wrong), and (2) because his parentage was uncertain (though, of course, no uncertainty could exist in the case of the mother).

"In the case at bar the only doubt as to the right of the children of Ella McMillan to inherit arises out of the fact that their mother (the person whom it would seem that the statute was meant to benefit) was dead before the passage of the act. This statute was intended by the legislature to invest the illegitimate child (so far as his mother's property is concerned) with inheritable blood, as if he had been born in wedlock. Can this statute breathe the breath of life into the dead illegitimate and invest her with such inheritable blood as that she can transmit to her children the right to inherit from the one from whom she could inherit if she had lived? Would such a construction of the law be retrospective? It is a well settled rule that an heir may transmit through his heritable blood to his heirs property which he would have inherited if he had been alive at the time of the distribution.

"The questions propounded above are answered by the Supreme Court of Massachusetts in the case of *Curtis v. Hewins,* 11 Metcalf 294. The Court decides that in such

a case the provision of the statute does not apply to the grandchildren of the mother of the illegitimate child.

"The contrary view is taken by the Texas Court, in the case of *Blair* v. *Adams,* 59 Fed. Rep. 243, and by the Illinois Court in *Bales* v. *Elder,* 118 Ill. 436, 11 N. E. 421. So also by the Indiana Court, in *Moran* v. *Holiday,* reported in·77 N. E. 861. The last named case is strongly relied upon·by defendants, and will doubtless be fully presented to the Court by counsel. In this case the illegitimate daughter died June 7, 1892, the enabling statute was passed in 1901, and the intestate died in 1902. The widow and mother of another illegitimate son claims all the property, on the ground that the first illegitimate daughter died nine years before the statute was passed, but the Court decided that the children of the illegitimate daughter should share in the distribution of the estate.

"In *Bales* v. *Elder, supra,* suit was brought to partition the land of Hiram Walker, a legitimate son of Sarah Walker, a woman who had an illegitimate son, Hampton D. Bales. Hiram Walker died intestate, leaving (as defendants contended) one sister and the descendants of four sisters as his only heirs at law. Hampton D. Bales, the illegitimate, died in 1852, Sarah Walker in 1854, the statute was passed in 1872, and this case was tried in 1887. The question was whether or not the children of the illegitimate Hampton D. Bales were heirs at law of their uncle, Hiram Walker, along with his sisters' children and surviving sister. In this case the illegitimate had been dead for twenty years when the act was passed. In deciding that the descendants of the illegitimate were heirs at law, and as such should .participate in the distribution of the Walker estate, the Court says:

" 'It is claimed that appellant cannot claim under the act of 1872, for the reason that Sarah Walker and Hampton D. Bales both died before the act was passed. There is no provision of the act under which its application is limited

and confined to a case where the mother and illegitimate may be living at the time the act took effect. This act is one prescribing a rule of descent of property. * * * The appellants do not claim a part of this estate as heirs of Sarah Walker, or Hampton D. Bales, but they claim as the heirs of Hiram Walker; and as he died after the act of 1872 was adopted, his estate must descend and be distributed according to that act.'

"The effect of this case is to hold that such application of the statute as the defendants in the case at bar ask for is *not* retrospective; and I hold as a matter of law that the act of the legislature of 1906 (sec. 3562) would not be retrospective when so applied, for the reason that the act looks forward to the time when the distribution of the intestate's estate is to be made, and not backward to the time when the illegitimate died, leaving children. After a very long and careful consideration of this case, I have been forced to this conclusion, although I must state that the case has been an exceedingly difficult case to decide. I do not find it necessary, however, to base my report upon the cases decided from Indiana, Illinois and Texas alone; the plain provision of our own statute is much clearer and simpler than the reasoning in these cases cited from other jurisdictions. Section 3555, vol. I, Code of 1912, subdivision I, c. 2, reads as follows:

" 'The lineal descendants of the intestate shall represent their respective parents, and shall take among them the share or shares to which their parents would have been entitled had such parents survived the intestate.'

"(The word *intestate*, in the first line of the quoted sentence, appears as *estate* in the Code of 1912, but of course this is a typographical error—*intestate* is meant.) This section has been the law of South Carolina for more than a hundred years, and it is to be presumed that the legislature intended the act of 1906 to fit into the body of the law already in force in South Carolina. If we put these two

provisions of the law together (sec. 3562 and sec. 3555, subd. 1) we shall be forced to the conclusion that the children of Ella McMillan are heirs at law of Nancy D. McClure; our statute says that they shall represent their mother, and take the share she would have been entitled to if she had survived her parent. Such a construction does not make the statute retroactive, because the statute is looking forward to the death of the ancestor, to the time of the distribution of the intestate's property. When the legislature uses a technical word, it is to be presumed that they intended a technical construction to be given it. Therefore, if an illegitimate is to be the "heir at law" of his mother, he is to be invested with inheritable blood, such as other "heirs at law" possess under the plain wording of the statutes already in force. I hold, therefore, that the act under consideration invested even a dead illegitimate child with heritable blood, which such child could transmit to his living children, so as to enable them to share in the distribution of any property of which the mother of such dead illegitimate child might die seized and possessed of, after the passage of the act. Therefore, Iris Wilson, Ralph McMillan and Nannie McMillan are heirs at law of their grandmother, Nancy D. McClure, and as such are entitled to their share of her estate, *i. e.,* the share that their mother would have been entitled to if she had lived longer than Nancy D. McClure. *Ita lex scripta est.*"

To this report the plaintiff, J. W. Trout, and the defendants, Stanley Burnett, Flavius Burnett, Joyce Burnett, Ruby Burnett and Eleanor Burnett, excepted, upon the ground that the master erred:

First. In holding that the defendants, Iris Wilson, Ralph McMillan and Nannie McMillan, are the heirs at law of their grandmother, Nancy D. McClure.

Second. In holding that the said defendants are entitled to the share of their grandmother's estate that their mother,

Ella McMillan, the illegitimate daughter of Nancy D. McClure, would have taken had she survived her mother.

Third. In holding that the act of 1906, section 3562, Code Law, vol. I, 1912, was retroactive and invested a dead illegitimate child with heritable blood.

Fourth. In failing to hold that the act of 1906, section 3562, Code Law, was not retroactive, and that Ella McMillan never had any vested interest in her mother's estate which she could transmit to her children.

Fifth. In failing to hold that Iris Wilson, Ralph McMillan and Nannie McMillan were not the lineal descendants of Mrs. Nancy D. McClure, and not entitled to any part of her estate.

From the Circuit decree, reversing the master's report, this appeal is taken.

*Messrs. Gwynn & Hannon,* for appellants, cite: *As to the construction of remedial statutes:* 187 Fed. 951; 192 Fed. 582; 180 Fed. 833; 81 S. E. 283; 74 N. E. 274; 77 N. E. 861; *Hall* v. *Hull,* in Hun. 311; 36 Cyc. 1174, 1209; 93 S. C. 216. *Effect of codification in Civil Code:* Sec. 3555; 96 S. C. 313. *Right to inherit not vested:* 14 Cyc. 25; 5 Cyc. 642, note 95 and 96; 45 Ga. 575; 118 Ill. 436; 121 Ill. 217; 41 Iowa 650; 83 Me. 251; 54 N. C. 243; 78 N. C. 412; 16 R. I. 597. *Death of illegitimate before descent cast will not preclude his issue from receiving the estate through him:* 5 Cyc., p. 642, note 96, and cases cited; 11 Metc. 294, *criticised;* 77 N. E. 861.

*Messrs. Carson & Boyd* and *John Gary Evans* and *I. C. Blackwood,* for respondents, submit: *Position of statute in Code immaterial:* 48 S. C. 558. *Interpretation of statutes:* Endlich, sec. 4; 56 S. C. 180; 11 Metc. 294; 5 Stats. 162. *"Heir" defined:* 2 DeS. Eq. 57; *Ib.* 18.

September 24, 1914.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was a suit brought to partition the lands of Nancy D. McClure, who died intestate in 1910. She left surviving her as her heirs at law the respondents, who are her son and the children of a predeceased son. The appellants are the children of a predeceased daughter, who was an illegitimate daughter of Nancy D. McClure. The only question involved in the appeal is: "Do the children of Ella McMillan, born Ella Trout, who was an illegitimate daughter of Nancy D. McClure, take as heirs of the estate of their grandmother, Nancy D. McClure, who died intestate?" Their mother, Ella McMillan, having died several years before her mother, Nancy D. McClure, and prior to the enactment of the statute of 1906 (25 Stats. at L. 156; Civil Code 1912, sec. 3562). The master found that they were entitled to inherit and so recommended, but upon exceptions to his report, his Honor, Judge Shipp, reversed his report, and decreed that they were not entitled to inherit, and from this decree an appeal is taken, and above question is raised for determination. We are inclined to give a broad and liberal interpretation to the act of the legislature, and not a narrow, restricted interpretation. It was clearly the intention of the legislature, when they enacted the act in question, that the illegitimate children, whose mother should die intestate possessed of any real or personal property, should inherit, as far as that property is concerned, as an heir; and it was the intention to make the illegitimate child an heir of the mother of the property she was possessed of at her death, and in the event of the illegitimate child's death leaving heirs born in wedlock that they should take the share their parent would have taken if alive. In other words, it was the intention of the legislature by the act to make the illegitimate child an heir to inherit the property that the mother was seized and possessed of at her death, and having so made the illegitimate child an heir at law, the illegitimate's child would inherit the share that the illegitimate child would have inherited if alive. We cannot add to the

reasoning of the admirable report of the master for Spartanburg county, S. T. Lanham, Esq., on this question. His report is sustained both by reason and authority cited by him. The exceptions to the decree of his Honor, Judge Shipp, are sustained and his decree reversed.

MR. JUSTICE FRASER, *dissenting.* I dissent. It is clear to my mind that the right of illegitimates to inherit is a restricted right under the act of 1906 (25 Stats. 156; Civil Code, 1912, sec. 3562). The restriction is to property, real or personal, of which the mother was possessed, and only as to *such property* are the children heirs at law. If the legislature intended to give inheritable blood generally, why use the words "be so far as said property is concerned, an heir" or heirs at law "as to *such property.*"