82 P.2d 900

**STATE et al. v. CHÁVEZ et al.**

No. 4389.

Supreme Court of New Mexico.

Sept. 12, 1938.

Frank H. Patton, Atty. Gen., and Richard F. Manson, Asst. Atty. Gen., for appellants.

W. A. Keleher, Theo. E. Jones, and Waldo H. Rogers, all of Albuquerque, for appellees.

BRICE, Justice.

The sole question is whether an illegitimate child of an illegitimate mother may inherit from his maternal illegitimate uncle, who was never married, who had no other blood relative, and whose mother and the mother of the illegitimate child had predeceased him? A subsidiary question is whether an illegitimate child takes through, as well as from, his mother. The appellee Chavez will be called appellee in this opinion.

The facts need not be stated, as they are not in dispute, and the parties agree that a determination of this question of law will dispose of the case.

The right of appellee to inherit under the circumstances depends upon the following statutes:

" * * * When any person * * * dies without disposing of the estate by will, it is succeeded to and must be distributed subject to the payment of his debts in the following manner: One-fourth thereof to the surviving husband or wife and the remainder in equal shares to the children of decedent and further, as provided by law." Sec. 38-106, N.M.Sts.1929.

"If any one of the children of the intestate be dead, the heirs of such child shall inherit his share in accordance with the rules herein prescribed in the same manner as

though such child had outlived his parents.". Sec. 38-108, N.M.Sts.1929.

"If the intestate leave no issue, the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent. Sec. 38-109, N.M.Sts.1929.

"If both parents be dead, the portion which would have fallen to their share, by the above rule, shall be disposed of in the same manner as if they had outlived the intestate, and died in the possession and ownership of the portion thus falling to their share; and so on through the ascending ancestors and their issue." Sec. 38-110, N.M. Sts.1929.

"If there be property remaining uninherited, it shall be escheat to the State." Sec. 38-112, N.M.Sts.1929.

"Illegitimate children shall inherit from the mother and the mother from the children; they shall inherit from the father whenever they have been recognized by him as his children, but such recognition must have been general and notorious, or else in writing, and if such recognition be in writing it must have been signed by the reputed father in the presence of at least two competent witnesses and must be such as to show upon its face that it was so signed with the intent of recognizing such children as heirs." Sec. 38-114, N.M.Sts.1929.

"Under such circumstances, if the recognition of relationship has been mutual, the father may inherit from his illegitimate children, but in thus inheriting from an illegitimate child, the mother and her heirs take preference of the father and his heirs. Sec. 38-115, N.M.Sts.1929.

"Illegitimate children become legitimate by the marriage of their parents." Sec. 38-116, N.M.Sts.1929.

At the common law an illegitimate child, so far as inheritance was concerned, was nullius filius (a child of nobody). This applied solely to matters of inheritance, and not to other relations of an illegitimate child with his parents or with the state. He had no inheritable blood, and therefore could not inherit property. He was cut off completely from his ancestors, including his father and his mother. He established a new line of descent from himself. Ex parte Wallace, 26 N.M. 181, 190 P. 1020; Dickinson's Appeal, 42 Conn. 491, 19 Am.Rep. 553; 1 Blackstone's Comm. 459; 10 C.J.S. title "Bastards" §§ 21 and 23.

It is contended by the appellants that as sections 38-114 and 38-115, which we have quoted, are in derogation of the common law they should be strictly construed, and if so construed, that we must hold that an illegitimate child cannot inherit through his deceased mother, but only from her; and cite in support Jackson v. Jackson, 78 Ky. 390, 39 Am.Rep. 246; Thigpen v. Thigpen et al., 136 Ga. 541, 71 S.E. 790; Burris v. Burgett et al., 16 Del.Ch. 10, 139 A. 454; Voorhees v. Sharp et al., 63 N.J.Eq., 216, 49

A. 722; In re Rees' Estate, 166 Pa. 498, 31 A. 254; Stevenson v. Sullivant, 5 Wheat. 207, 5 L.Ed. 70; Haraden v. Larrabee, 113 Mass. 430; Cope v. Cope, 137 U.S. 682, 11 S.Ct. 222, 34 L.Ed. 832; Pratt v. Atwood, 108 Mass. 40.

■ The statute in question is in derogation of the common law, but notwithstanding that fact, it is a remedial statute and should be liberally construed, if in fact the proper rules for the construction of these statutes have any relation to the common law. Milburn v. Milburn, 60 Iowa 411, 14 N.W. 204; Berry v. Powell, 101 Tex. 55, 104 S.W. 1044, 16 Ann.Cas. 986; Moore v. Moore, 169 Mo. 432, 69 S.W. 278, 58 L.R.A. 451; Trout v. Burnett et al., 99 S.C. 276, 83 S.E. 684, Ann. Cas.1916E, 911; Dickinson's Appeal, supra; Bennett v. Toler, 15 Grat. 588, 56 Va. 588, 78 Am.Dec. 638; Lewis v. Eutsler, 4 Ohio St. 354; Smith v. Smith, 105 Kan. 294, 182 P. 538; Record v. Ellis, 97 Kan. 754, 156 P. 712, Ann.Cas.1917C, 822, L.R.A.1916E, 654; Houston-Hart Lumber Co. v. Neal, 16 N.M. 197, 113 P. 621; Lyons v. Howard, 16 N.M. 327, 117 P. 842; Adger v. Ackerman, 8 Cir., 115 F. 124; In re Gorkow's Estate, 20 Wash. 563, 56 P. 385; Shelton v. Minnis, 107 Miss. 133, 65 So. 114; Goodman v. Goodman, 150 Va. 42, 142 S.E. 412; State ex rel. Canfield v. Porterfield, 222 Mo. App. 553, 292 S.W. 85; Pederson v. Christofferson, 97 Minn. 491, 106 N.W. 958; Swanson v. Swanson, 2 Swan 446, 32 Tenn. 446; Williams v. Witherspoon, 171 Ala. 559, 55 So. 132; In re Garr's Estate, 31 Utah 57, 86 P. 757; Wadsworth v. Brigham, 125 Or. 428, 259 P. 299, 266 P. 875.

■ The common law with reference to inheritances, and particularly that of illegitimate children has never been in force in New Mexico. There was never a time in this state, or in the Territory of New Mexico, or when New Mexico was a part of Mexico or its territory belonged to the Kingdom of Spain, that an illegitimate child did not have certain inheritable rights in property; or, in other words, had inheritable blood. We have never looked to the common law for the construction of such statutes. Harrison v. Harrison, 21 N.M. 372, 155 P. 356, L.R.A.1916E, 854; Beals v. Ares, 25 N.M. 459, 185 P. 780. The statutes regarding illegitimate children are derived indirectly from the civil law, and if interpretation is necessary, that law, and not the common law, should be the source of the rules of interpretation. Harrison v. Harrison, supra, Beals v. Ares, supra. In the Beals Case, in commenting on this act (prior to amendment in 1915), we stated (page 788):

"Section 21, c. 90, Laws 1889, an act to amend the law relative to the estates of deceased persons, provided for the distribution of the estate of deceased persons, together with other sections of said act. This act was modeled after the civil law of Spain and Mexico, and necessarily we would look to that law for definitions and interpretations, just as we would look to the decisions of the courts of a sister state for the construction and interpretation of statutes tak-

en from such state. But because the act was modeled after the Spanish-Mexican civil law would be no reason for the holding that the whole body of the civil law, upon the subject about which the legislature was enacting, was incorporated into our law, because the legislature saw proper to take parts of it and put it in statutory form. * * *"

That illegitimate children have no inheritable blood is but a fiction of the common law (McKeller v. Harkins, 183 Iowa 1030, 166 N.W. 1061) and has no application to our statutes, which are of civil law origin. They were adopted verbatim from the statutes of Kansas and Kansas adopted them from Iowa, not all verbatim; but where not, then in substance.

Before we attempt to construe these statutes, it will be of assistance to note the conclusions reached by the Supreme Courts of Kansas and Iowa from whence they came to us.

The Supreme Court of Kansas in Smith v. Smith, supra, construed identical statutes, subsequent to their adoption here. The illegitimate child in that case claimed inheritance through the father. The Kansas court stated (page 540):

"It is contended that as the right depends upon the statute, and as section 3845 expressly provides that an illegitimate shall inherit from his father, it evidences a legislative intention not to put such child in the line of inheritance the same as children born in wedlock, but to limit the right to inherit from the father alone. The other sections indicate a purpose to take away the disqualification resulting from illegitimacy and to clothe the illegitimate with heirship and place him in the line of succession with other children of an intestate. It is provided that the illegitimate shall inherit from his mother, and in similar language gives him the right to inherit from his father. Then follows the provision that the mother shall inherit from the illegitimate child and, where there is the required recognition, the father also shall inherit from such child. Then, as showing that the relationship when duly established by recognition, the father also shall inherit from such child, it is provided that in the matter of inheritance the mother and her heirs shall take preference over the father and his heirs.

"The Legislature contemplated a relationship of succession not only with the father but also with the heirs of the father. We have no doubt from the language used that the Legislature intended to give an illegitimate the status of a general heir in the matter of the descent and distribution of the property of an intestate, and that the plaintiff is entitled to inherit from his father's father."

The Iowa statutes corresponding to Sections 38-114 and 38-115 of our statutes are:

"Illegitimate children inherit from their mother, and she from them." Sec. 12030, Code of Iowa, 1935.

"They shall inherit from the father when the paternity is proven during his life, or they have been recognized by him as his

children; but such recognition must have been general and notorious, or else in writing. Under such circumstances, if the recognition has been mutual, the father may inherit from his illegitimate children." Sec. 12031, Code of Iowa, 1935.

These statutes which are in almost identical words, and in substance the same as ours, were construed in 1875 by the Supreme Court of that state in McGuire v. Brown, 41 Iowa 650. This was long before they were adopted by New Mexico. That court stated:

"The agreed facts show that the parents of George McGuire, the testator, were both dead at the time of his decease; their share, therefore, is to be disposed of under section 2497, above, 'in the same manner as if they, or either of them, had outlived the intestate (testator) and died in possession and ownership of the property thus falling to their share.' In other words, their share descended to their children and to the child or children of any deceased child. It further appears that the plaintiff and John McGuire, sons of the deceased parents, were living at the time of the testator's death, and that Sarah McGuire, (deceased) was the only other child of such parents that had left any child. * * *

"Section 2441, of the Revision, provides that 'illegitimate children inherit from the mother, and the mother from the children.' This section constitutes an illegitimate child a lawful heir of the mother, for the capacity to inherit being conferred it follows that the child is in effect an heir to the mother and the mother an heir to the child. Section 2437, before set out, provides that where any of the children of an intestate be dead the heirs of such child shall inherit his share in accordance with the rules prescribed in the same manner as though such child had outlived his parent.' Now it is conceded by counsel for defendant that if Sarah McGuire had been alive at the time of the death of the testator she would have taken one-third of the share descending through her parents, that she would have taken one-sixth of the estate in controversy. That this view is correct admits of no doubt. It is equally clear, and is admitted, that in such case, upon the death of Sarah McGuire intestate, her illegitimate daughter would inherit this share.

"Now, under section 2497, the parents, for the purpose of the descent of the property, are to be considered as having outlived George McGuire and died in possession of one-half of his estate. By section 2437, Sarah McGuire, one of the children of the deceased parents, is to be deemed to have outlived her parents for the purpose of enabling her daughter, Martha L. Gibbins, to inherit from her the share she would have taken from her parents in the estate of George McGuire; Martha L. Gibbins being the heir of her mother who is to be deemed to have outlived her parents, Martha takes the share of her mother in the same manner as though she had in fact outlived them. In this view, of the correctness of which we have no doubt, it follows that Martha

L. Gibbins inherited an undivided one-sixth interest in the land in controversy, * * *."

The McGuire Case was approvingly referred to in McKeller v. Harkins, 183 Iowa 1030, 166 N.W. 1061, in which a similar question was decided. The court stated (page 1065):

"In neither of the statutes under consideration in these cases was there any express provision that an illegitimate could inherit from an ancestor of its parent; nor was there any provision in terms that the descendants of an illegitimate could inherit from an ancestor of either father or mother. The effect of our holding in the McGuire Case was that the right conferred upon an illegitimate to inherit from her mother carried with it the right to inherit from her ancestors whatever the mother herself would have inherited if living. What we held in the Johnson [v. Bodine] Case [108 Iowa 594, 79 N.W. 348], was that section 3385, conferring upon an illegitimate the right to inherit from the father when the paternity is properly proved, carries with it the right of inheritance down the line of the descendants of the illegitimate. It may be conceded that there is much authority to the contrary. The decisions referred to were not made in ignorance of that fact. The general purport of the argument in support of the contrary authority is the old rule at common law that an illegitimate has no inheritable blood and is without kin and without ancestry. Inheritances therefore cannot pass through the blood of a bastard.

He can have no heirs save those of his own body, and the ancestry of such heirs terminate in the bastard. The rule is stated briefly by Kent as follows:

" 'A bastard has no inheritable blood and is incapable of inheriting as heir either of his putative father or his mother, or of any one else, nor can he have heirs but of his own body.' 2 Kent Com. 212.

"This rule has been one of the reproaches of the common law which has shocked the legislative and judicial conscience of the civilizing world. That a bastard has no inheritable blood is only a legal fiction. Legal fictions have their appropriate uses. They are the stepping stones of the law's reasoning; the parables whereby its principles are illustrated. When its reason fails, the fiction falls. The fiction that a bastard has no inheritable blood has been shorn of its reason in this state by legislation. It remains, therefore, a fiction only. Our legislation has conferred upon the illegitimate the right of inheritance with appropriate safeguards as to the certainty of paternity. Why, therefore, should we deal with fine-spun theories of the common law as to inheritable blood? The only justification ever offered for the common-law fiction was that bastardy should be rendered odious. But bastardy is the sin of the parent; not of the child. The illegitimate child is as innocent as the babe of Bethlehem. Yet the common law held its fiction as a shield over the guilty parent and frowned upon the guiltless child with the disdain of a Pharisee. Our early territorial legislation struck at the

·cruel injustice of this fiction. From territorial days until now there has never been a time in this state when it has not been contradicted by existing legislation. The McGuire and Johnson Cases were decided in response to the spirit of such legislation and are in entire harmony therewith."

Also see In re Riemann's Estate, 124 Kan. 539, 262 P. 16; Johnson v. Bodine, 108 Iowa 594, 79 N.W. 348; Milburn v. Milburn, 60 Iowa 411, 14 N.W. 204; Hastings v. Rathbone, 194 Iowa 177, 188 N.W. 960, 23 A.L.R. 392, and Pfeifer v. Wright, 10 Cir., 41 F.2d 464, 73 A.L.R. 932, and particularly the dissenting opinion of Judge McDermott whose residence and familiarity with the laws of Kansas singularly fitted him for interpreting its statutes.

The statutes of descent and distribution which we have quoted in this opinion are parts of the same act and all have reference to the descent and distribution of estates of decedents, and therefore are in pari materia, and are to be construed accordingly (Martin v. Claxton, 308 Mo. 314, 274 S.W. 77; Morin v. Holliday, 39 Ind.App. 201, 77 N.E. 861; Foster v. Lee, 172 Ala. 32, 55 So. 125, Ann.Cas.1913C, 1335; Comm'r of Immigration v. Gottlieb, 265 U.S. 310, 44 S.Ct. 528, 68 L.Ed. 1031), and when so construed liberally in deference to their remedial character, we are satisfied with the conclusion reached by the courts of Iowa and Kansas for the reasons which we will now state.

Our statutes, and those of Iowa and Kansas, do not provide in terms that an illegitimate child shall inherit from his mother "the same as if he were legitimate," or, "as if lawfully begotten," as do those of a number of states. But how else could he inherit? There is no specific provision for the manner of his inheriting property from his mother or the portion, and if not as a child as provided by the general statutes of descent and distribution, then the statute is too indefinite and uncertain to be the law. When construed with the other sections of the act quoted, it is certain that the legislature meant that an illegitimate child should inherit from his mother as other children mentioned in the act should inherit; that is "as if lawfully begotten," otherwise the statute is meaningless, and we so hold.

With this construction in mind, we turn to a consideration of Sec. 38-110 of the statute, which, in substance, provides that in case the parent of a decedent who would have inherited his property if alive had predeceased him, the portion which would have fallen to such deceased parent or parents shall be disposed of "in the same manner as if they [the parents] had outlived the intestate" and died in possession and ownership of it.

As the uncle of the appellee (the decedent) was illegitimate and there was no evidence that he was ever recognized by his father as required by the statute, his property (he having never been married or had children) would have gone to his mother if she had outlived him. If the grandmother of the appellee had died in possession of this property, it would have

gone to appellee's mother, if living, and if not "the heirs of such child [her mother] shall inherit his [her] share in accordance with the rules herein prescribed in the same manner as though such child had outlived his [her] parents." Sec. 38-108, N.M.Sts.1929.

The only heir of the "child" of appellee's grandmother who could have inherited the property of decedent was appellee. His mother being dead, her heir (who, it is agreed, is appellee) takes the part in the estate that his mother would have taken if living, by virtue of Sec. 38-114, N.M.Sts. 1929. It follows that appellee is the only heir of the intestate, whose estate would have gone to appellee's grandmother (decedent's mother) if she had outlived decedent.

█ That is the conclusion we reach from a consideration of these statutes together; but we think the same intention may be deduced from a consideration of Secs. 38-114 and 38-115 only. The contention is that the former limits the right of appellee to inherit from his mother and not through her.

█ It is agreed that the collateral kindred of a deceased illegitimate person can inherit from him through his mother; yet the only statutory authority is Sec. 38-114, supra, "illegitimate children shall inherit from the mother and the mother from the children;" and the only statutory authority for the paternal collateral kindred of a deceased illegitimate child to inherit from him is the words of Sec. 38-115, supra, "Under such circumstances, if the recognition of relationship has been mutual, the father may inherit from his illegitimate children." The words following, "but in thus inheriting [referring to both father and mother] from an illegitimate child, the mother and her heirs take preference of the father and his heirs," are explanatory of the meaning of the words, "the mother [shall inherit] from the children," and "the father may inherit from his illegitimate children." It shows the intention that the word "mother" should include the heirs of the mother and the word "father" should include the heirs of the father.

█ The effect is that the estate of an illegitimate child whose mother is dead is inherited by his mother's kindred (and the father's under given circumstances) according to the laws of descent and distribution, as though the child were legitimate. This is not questioned. We are of the opinion that the same intention applies to the words "The illegitimate child shall inherit from the mother." It gives the child heritable blood, so that he inherits through, as well as from, the mother. If the heirs of the mother and father can inherit from the child through the mother or father by virtue of the language "the mother shall inherit from the child" and "the father may inherit from his illegitimate child," which is made plain by the context, then it likewise makes plain that it was intended that an illegitimate

child should inherit from and through his mother, and we so hold.

But aside from the decisions of the Iowa and Kansas courts, we believe that the weight of authority generally supports our conclusion.

The first statute enacted in America for the relief of illegitimate children was that of Virginia in 1785, which was said to have been written by Thomas Jefferson. It was adopted in the original, or modified form, by many of the American states. It reads:

"Bastards also shall be capable of inheriting or of transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother" Laws 1785, c. 60.

In construing this statute in Bennett v. Toler, 15 Grat. 588, 56 Va. 588, 78 Am. Dec. 638, the Supreme Court of Virginia held that an illegitimate child took with the legitimate children in a devise from his maternal grandfather to his mother for life, and at her death the property to be equally divided among her children. The court stated:

"The framers of this act we are told by Carr, judge, in Davis v. Rowe, 6 Rand. [355] 364 [27 Va. 355], 'looked at the common law canons of descent to avoid, not to imitate; to pull down, not to build up. All its principles are violated; its landmarks removed, its fences broken down, its traces obliterated.' 'Its basis,' says Judge Parker in Garland v. Harrison, 8 Leigh 368, referring for his positions to the opinions of Judges Tucker and Roane in Stones v. Keeling, 5 Call 143, 'was the statute of distributions and the civil law. It is founded on the great principles of justice. Its object was to make such a will for the intestate as he would himself probably make; and its obvious policy was to follow the lead of the natural affections, and to consider as most worthy, the claims of those who stand nearest to the affections of the last occupant. It ought therefore at all times to be liberally construed in favor of those to whom the intestate himself, had he made a will, might be supposed to be most favorable, without reference to common law rules or feudal disabilities.'

"Under the influence of these principles, the judges in Garland v. Harrison [supra], proceeded to the construction of the provision of the act of descents, declaring that bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, as if lawfully begotten: and the result can be best arrived at by quoting their own expressions. After enumerating his common law disabilities, Judge Parker says: 'It was the object of the law to give the bastard a mother, and to place him in all respects on the same footing as a lawfully begotten child, born of the same mother.' Again, after commenting on § 6, Code, ch. 123, and § 19, 1 Rev. Code, p. 357, declaring that a child born before marriage and the parents intermarry, if recognized by the, father, shall be deemed legitimate, he says, 'I have no doubt that it was intended by the section

respecting bastards, to bestow upon illegitimate children the same capacities of inheriting from or through the mother, and passing inheritances to or through her, as they possess under the other section in respect to both parents; that is to say, to make them in all respects the legitimate children of their mother.' * * *

"Comment on these opinions is almost unnecessary. At the common law he had no mother; this statute gives him one. He is placed in all respects upon the same footing as a lawfully begotten child born of the same mother. He is therefore no longer, as to her, quasi filius nullius, but her child, inheriting from and through her, transmitting inheritance to and through her. If seized of property, she dies intestate, the act says it shall descend and pass in parcenary to such of her kindred, etc., in the following course—first, to the children and their descendants. If she dies leaving illegitimate and legitimate children, does not the word children comprehend all in the same class? Would it be argued that the illegitimate child would not take with the legitimate children?"

In Town of Burlington v. Fosby, 6 Vt. 83, 27 Am.Dec. 535, the question was whether an illegitimate child could inherit from another illegitimate child of the same mother under the Virginia statute, which had been adopted in Vermont and is,

"Bastards shall also be capable of inheriting and transmitting inheritance on the part of the mother, as if legally begotten of such mother."

The court stated:

"* * * Now, when Thomas died, if he was 'capable of transmitting inheritance on the part of his mother,' why did not the estate pass to Rhoda, the sister, if the mother was not living, and if living, half to the mother and half to the sister? Who is a child's mother, can be rendered certain to a certain intent; and so also that the same woman is the mother of both children; and so are such children always called and known as the children of such a woman: And, with the proviso in the same act, before quoted, could the legislature, in the 75th section, mean to exclude this description of persons, and confine the descent to the legitimate 'brothers, sisters and mothers,' thereby in effect repealing much of the beneficent and remedial provision of the 77th section, made evidently to ameliorate the condition of these unhappy persons, and thereby take the bread from the innocent surviving children, and give it to their unnatural father, the public? We think not."

In Dennis v. Dennis et al., 105 Tenn. 86, 58 S.W. 284, the court construed the following statute (page 285):

"Where any woman shall die intestate having a natural born child or children, whether she also have a legitimate born child or children, or otherwise, such natural born child or children shall take by the general rules of descent and distribution equally with the other children the estate, real or personal, of his or her and their mother; and should either of such

children die intestate without child, his or her brothers and sisters shall in like manner take his or her estate."

Provision is then made for brothers and sisters to inherit in the absence of wife, mother or children. The court stated:

"The illegitimates are put on the same plane and footing as the legitimates, so far as the purpose of inheriting from the mother is concerned, and for this purpose they are legitimate. They then have all the same kindred as her legitimate children have, and when the latter take by descent and distribution, according to the degrees prescribed by statute, the illegitimates take equally with them. The illegitimates take in the same character and in the same manner, as well as to the same extent, as the legitimates, and therefore complainant inherits from his aunt that portion of the estate which his mother would have inherited had she been living."

The Supreme Court of Maryland construed statutes of that state with reference to illegitimates, in Barron v. Zimmerman, 117 Md. 296, 83 A. 258, Ann.Cas. 1914D, 574. The statute provided that an illegitimate child of any woman may inherit her property as if born in lawful wedlock. It was held that an illegitimate child was the child of its mother; that where the mother of an illegitimate child was dead, such child was entitled to inherit as an heir of his maternal aunt. The court stated (page 259):

"The decisive question thus presented is not whether the appellant would be so entitled merely by force of the section making him capable of inheriting direct from his mother, or whether the term 'child' as ordinarily used in a statute would include an illegitimate, but whether, under a codified system of laws by which such a person is invested with the full qualifications of legitimacy with reference to the inheritance of his mother's estate, he is within the purview of a constituent provision that the estate which the deceased mother would have inherited shall pass to her 'child or children.' In our judgment this question should be answered in the affirmative. It would certainly seem to be a reasonable construction of statutory provisions which are codified together as parts of the same general plan of descent and distribution to hold that one who is placed in the position of a lawfully begotten child for the purpose of inheriting from his mother should be regarded as a 'child' of the mother within the intent of the law for the purpose of succeeding to the estate which she would have inherited if she had survived."

In Berry v. Powell et al., 101 Tex. 55, 104 S.W. 1044, 16 Ann.Cas. 986, the Supreme Court of Texas construed its statute, which in substance provided that bastards may inherit from and through their mother and transmit estates, etc. It is held that an illegitimate child could inherit from her illegitimate brother, both being of the same mother, and stated (page 1045):

"The courts which hold that one bastard may inherit from another proceed upon the

broad ground that the intention of the Legislature was to abrogate the rigorous rule of the common law with reference to illegitimate children, and to confer upon them a capacity for inheritance more in accordance with the principles of natural justice. Hence they have construed the statutes liberally so as to effectuate that intention. Under the Spanish law, to which we were subject until 1840, bastards inherited from their collateral kindred. Schmidt's Law of Spain & Mexico, art. 1255 et seq. Is it to be supposed that the Congress of 1840, who had lived under the humane laws of Spain with respect to illegitimate children, intended any less liberal provisions with respect to this class of unfortunates? We think not. We think the act of 1840, based upon the Virginia statute as construed by the Supreme Court of that state, was deemed sufficient to invest bastards with inheritable blood on the mother's side, and that, in the amendment of 1848, the statute was intended to be so changed as to remove all doubt upon the question."

Also see Moore et al. v. Saxton, 90 Conn. 164, 96 A. 960, Ann.Cas.1917C, 534; Rhode Island Hospital Trust Co. v. Hodgkin et al., 48 R.I. 459, 137 A. 381; Dickinson's Appeal, 42 Conn. 491, 19 Am.Rep. 553; Messer v. Jones, 88 Me. 349, 34 A. 177; Elder et al. v. Bales et al., 127 Ill. 425, 21 N.E. 621; Trout v. Burnett, 99 S.C. 276, 83 S.E. 684, Ann.Cas.1916E, 911; Southall v. Glover, 124 S.C. 160, 117 S.E. 184; In re Smith's Estate, 2 Cal.2d 652, 42 P.2d 1011.

The authorities holding in opposition to the cases we have cited supporting our conclusions generally base their decisions upon a strict construction of the statute, because in derogation of the common law. Harraden v. Larrabee et al., 113 Mass. 430; In re Lauer's Estate, 76 Misc. 117, 136 N.Y.S. 325; McCully et al. v. Warrick, et al., 61 N.J.Eq. 606, 46 A. 949; Stevenson's Heirs v. Sullivant, supra; Croan et al. v. Phelps' Adm'r, 94 Ky. 213, 21 S.W. 874, 23 L.R.A. 753; Williams v. Kimball, 35 Fla. 49, 16 So. 783, 26 L.R.A. 746, 48 Am.St.Rep. 238; Sutton et al. v. Sutton et al., 87 Ky. 216, 8 S.W. 337, 12 Am.St.Rep. 476; Dayton v. Adkisson, 45 N.J.Eq. 603, 17 A. 964, 4 L.R.A. 488, 14 Am.St.Rep. 763; Jackson v. Jackson, 78 Ky. 390, 39 Am.Rep. 246; Thigpen v. Thigpen et al., 136 Ga. 541, 71 S.E. 790; Burris v. Burgett, 16 Del.Ch. 10, 139 A. 454; Voorhees v. Sharp et al., 63 N.J.Eq. 216, 49 A. 722; In re Rees' Estate, 166 Pa. 498, 31 A. 254; In re Bullock's Estate, 195 N.C. 188, 141 S.E. 577; Reynolds v. Hitchcock, 72 N.H. 340, 56 A. 745; Cope v. Cope, 137 U.S. 682, 11 S.Ct. 222, 34 L. Ed. 832; Pratt v. Atwood, 108 Mass. 40.

But, as we have held, the common law rules of construction do not apply to these statutes; that if they did, we would hold that the statutes be liberally construed in behalf of illegitimate children; the authorities last cited do not control. In this connection see generally annotations in 83 A.L.R. 1339; 24 A.L.R. 592.

, It follows that the judgment of the district court should be affirmed, and it is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.