### GIBSON v. RIKARD *ET AL.*

#### (141 S. E., 726)

1. DESCENDENT AND DISTRIBUTION—RIGHT OF SUCCESSION TO PROPERTY AFTER DEATH IS NOT NATURAL, BUT LEGAL, RIGHT.—Right of succession to property after death is not a natural right, and in every instance resort must be had to law for such right.

2. DESCENT AND DISTRIBUTION—RESORT MUST BE HAD TO STATUTE OF DISTRIBUTIONS TO DETERMINE WHO NEXT OF KIN OR HEIRS AT LAW ARE (CIV. CODE, 1922, §§ 5326–5334).—When it is desired to ascertain who next of kin or heirs at law of intestate are, it is necessary to resort to statute of distributions, Civ. Code, 1922, §§ 5326–5334.

3. BASTARDS—STATUTE OF DISTRIBUTIONS DID NOT CHANGE COMMON LAW THAT NO ONE EXCEPT HIS OWN LINEAL DESCENDANTS COULD INHERIT FROM BASTARD; "ANY PERSON" (CIV. CODE, 1922, §§ 5326–5334; CONST. 1790, ART. 10, § 5).—Statute of distributions, Civ. Code, 1922, §§5326–5334, enacted in accordance with Const. 1790, Art. 10, § 5, did not change common law that bastard could not take by descent from any person and that no person except his own lineal descendants could inherit from him, since phrase "When 'any person' shall die without disposing of property" meant when any person with heritable blood shall die, and blood relation specified by statute is not sufficient to enable one to inherit, but there must be, in addition, ability to inherit.

4. BASTARDS—CHILDREN OF BROTHER OF MOTHER OF ILLEGITIMATE CHILD HELD NOT ENTITLED TO SUCCEED TO HIS ESTATE AS "HEIRS AT LAW" OR "NEXT OF KIN" (CIV. CODE, 1922, § 5327, SUBD. 6; ACT FEB 24, 1906 [25 ST. AT LARGE, P. 156], AS AMENDED BY ACT MAR. 12, 1920

---

NOTE: As to right of inheritance by, from, or through illegitimate, see annotation in 27 L. R. A. (N. S.), 220; 24 A. L. R., 570; 3 R. C. L., 773–781; 1 R. C. L. Supp., 892; 5 R. C. L. Supp., 201.

[31 St. at Large, p. 1039]).—Children of brother of mother of illegitimate child *held* not to be "heirs at law" or "next of kin" of such child and therefore not entitled to succeed to his estate, under Civ. Code, 1922, § 5327, subd. 6, or under Act Feb. 24, 1906 (25 St. at Large, p. 156), as amended by Act Mar. 12, 1920 (31 St. at Large, p. 1039).

5. ESCHEAT—THERE CAN BE NO DECLARATION OF ESCHEAT OF PERSONAL PROPERTY OF ONE DYING WITHOUT HEIRS UNTIL EXPIRATION OF TWO YEARS (CIV. CODE, 1922, §§ 5617, 5618).—There can be no declaration of escheat of personal property to which there is no heir to state until expiration of two years, under Civ. Code, 1922, §§ 5617, 5618.

6. ESCHEAT—ESCHEAT OF PERSONAL PROPERTY COULD NOT BE DECLARED IN PROCEEDING FOR SETTLEMENT OF DECEDENT'S ESTATE (CIV. CODE, 1922, §§ 5617, 5618).—Escheat of personal estate, to which there is no heir, to state could not be declared in proceedings for settlement of decedent's estate, but that matter must be left for adjudication in proceedings authorized by Civ. Code, 1922, §§ 5617, 5618.

Before FEATHERSTONE, J., Newberry, March, 1927. Affirmed.

Action instituted in the Probate Court, by W. T. Gibson, administrator of the estate of W. B. Rikard, deceased, against John D. Rikard and others for the settlement of the estate of decedent. The decree of the Probate Court was confirmed by the Circuit Court, and defendants appeal. Decree modified, and, as modified, affirmed.

*Mr. E. L. Asbill,* for appellants, cites: *Title to personalty of intestate is in administrator; necessary party to distribution suit:* 9 S. C., 258; 18 Cyc., 172. *Escheat:* Secs. 5617–5618, Code; 21 S. C., 447. *Collateral heirs inherit in case mother or child be dead:* Act No. 145, Acts 1927. *Statute remedial; construed liberally:* 98 S. C., 458; 99 S. C., 283. *Distribution of property:* Sec. 5327, Code.

*Messrs. Hunt, Hunt & Hunter,* for respondent, cite: *Decisive of this case:* 116 S. C., 235. *Legislative Act not retroactive unless that intention clearly shown beyond reasonable doubt:* 13 Rich., 277; 9 S. C., 288; 55 S. C., 363; 135 S. C., 190; 34 S. C., 468.

February 17, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The facts and legal issues involved in this cause are fully stated in the able and interesting decree of Hon. Neal W. Workman, Judge of Probate of Newberry County, which decree was confirmed in all respects by his Honor Circuit Judge Featherstone. From the decree of confirmation, certain of the defendants have appealed to this Court. The decree of the Probate Judge, which is here set out, is adopted as the opinion of this Court, except as hereinafter modified.

## DECREE OF PROBATE COURT

This is an action instituted in the Probate Court for Newberry County, by the plaintiff, as administrator of the personal estate of W. B. Rikard, deceased, against the defendants John D. Rikard, J. L. Rikard, Young Rikard, Simpson Rikard, Alonzo Rikard, and the state of South Carolina, having for its object the settlement of the estate of decedent. All the said defendants were served with the summons and complaint, and all filed answers.

W. B. Rikard died intestate on the 14th day of November, 1925, and on the 1st day of December, 1925, after due citation, plaintiff was granted letters of administration upon the personal estate of said decedent. The other facts necessary to an understanding of the issues joined herein will appear from the agreed statement of facts signed by the plaintiff, as administrator, and E. L. Asbill, Esq., attorney for the Rikard defendants, and Messrs. Hunt, Hunt, & Hunter, attorneys for the defendant, the State of South Carolina, which is as follows:

"The following facts, so far as this case is concerned, are agreed upon:

"That W. B. Rikard, the intestate, was the illegitimate son of Rhoda Rikard, and that Rhoda Rikard predeceased the intestate by many years without ever having married or having any other children. The intestate never married

and died without leaving any will. That the said Rhoda Rikard had the following brothers and sisters, to wit: Levi Rikard, David Rikard, Michael Rikard, and Elizabeth Rikard, Mary Rikard, and Polly Rikard. That all of said brothers and sisters have been dead for. many years, dying long before the intestate, W. B. Rikard. That several of the brothers and sisters of Rhoda Rikard had children, but all of said children of each of said brothers and sisters, except the children of Levi Rikard, died many years before the intestate. That the children of Levi Rikard, brother of Rhoda Rikard, living are the defendants, other than the State of South Carolina, in this action. That these defendants are the only living children of a brother or sister of the said Rhoda Rikard. That the mother of the intestate was a full sister of the father of the defendants in this case, other than the State of South Carolina. That the intestate died leaving no real estate, but leaving personal property, consisting of government bonds, a small stock of jewelry, etc., which was appraised at $2,723.50. That it appears now that there will be a considerable balance left after paying all debts, funeral expenses, and costs of administration. That the defendants in this case, other than the State of South Carolina, claim as heirs at law and next of kin of the said W. B. Rikard, deceased."

It is thus seen that the contest is not between the plaintiff and defendants, but between the Rikard defendants upon the one hand and their codefendant, the State of South Carolina, on the other—the plaintiff merely occupying the position of stakeholder, and by this action seeks instruction and direction from the Court as to which of said claimants he shall pay the balance in his hands, after the payments of debts, expenses of last illness, costs of administration, etc.

The Rikard defendants predicate their claims "as heirs at law and next of kin" upon the ground that they are first cousins in "blood" relationship of the intestate at the time of his death, and that they are, in fact, the next of kin of

intestate—all the brothers and sisters of intestate's mother, and all the children of said brothers and sisters, except these claimants who are the children of Levi Rikard, a full brother of intestate's mother, predeceased the intestate. The State of South Carolina resists this claim, denies that its co-defendants are the "next of kin" of intestate, although admitting the "blood" relationship between them and intestate, and contends that, as intestate was an illegitimate child, leaving surviving him no mother, brother or sister, widow or children, he died without any heirs at law or next of kin, and that his estate escheats to the State of South Carolina.

As intestate owned no real estate at the time of his death, it is necessary to refer only to so much of the law relating to escheats as is found in Section 5617 of the 1922 Code, which is as follows:

"Where any moneys or other personal estate shall be found in the hands of an executor or administrator, being the property of any person heretofore deceased, or hereafter dying, and leaving no person entitled to claim, and without making disposition of the same, the escheator of the county where such chattels shall be found, or the Attorney General, on behalf of the State, shall and may sue for, recover, and pay the same into the treasury of the State."

In *Howard v. Schmidt,* Rich. Eq. Cas., on page 457, Chancellor Harper, speaking for the Court, said:

"Whatever may have been before the legitimate meaning of the term escheat, the Acts of the Legislature on the subject explain in a manner too clear to be doubted, that it is intended to be applied as well to the case of a person's dying intestate, possessed of personal property, and leaving none who are known as next of kin, as to that of one's dying possessed of real property and leaving no heirs."

The question submitted by the pleadings, upon the agreed facts, is whether the Rikard defendants herein come within the definition of "next of kin" as that term is used in subdivision 6 of Section 5327, Code of 1922. If they do not,

it is admitted that the personal estate of intestate must escheat to the State of South Carolina. It is to that question that I now address myself.

The right of succession to property after death is at once interesting and important—interesting in its history, important in its results. It is not a natural, but a legal, right. In every instance resort must be had to the law for such right. Such right therefore resolves itself into the law of succession after death. This law, as it obtains in this state today, is divided into two essential branches, the one comprehending the law relative to wills, the other the law relating to intestate's estates. With that branch relative to wills we are not here concerned. It is the law applicable to intestate estates that we must consider, and herein, of the law of descent.

Could a bastard take by descent at common law? If so, has that right been abridged in this state? and if not, has such right been conferred upon him by statute in this state? In 4 Kent, Com. 374, it is said:

"The English law of descent is governed by a number of rules, or canons of inheritance, which have been established for ages and have regulated the transmission of the estate from the ancestor to the heir, in so clear and decided a manner as to preclude all uncertainty as to the course which the descent is to take. But, in these United States the English common law of descents, in its most essential features, has been universally rejected, and each state has established a law of descent for itself. The laws of the individual states may agree in their great outlines, but they differ exceedingly in the details. There is no entire, though there is an essential, uniformity on this subject."

Section 487, Tiff. Real Property (2d Ed.), is, in part, as follows:

"At common law, the real property belonging to decedents passed, in the absence of a valid will, to persons standing in a position of blood relationship to them, according to certain

established rules or 'canons' of descent. Personal property, on the other hand, including chattels real, passed. to the administrator, appointed by the ecclesiastical Court from among the intestate's next of kin, who usually, whether rightly or wrongly, appropriated to his own use all the surplus after payment of debts, until by statute it was provided that such surplus should be distributed, in a certain manner, to the widow and children, or, in default of children, to the next of kin."

The statute referred to in the last quotation as providing for the distribution of the surplus among the widow and children or next of kin, was the statute of 22 and 23 Car. 11, c. 10, which was adopted in this state in 1713 (11 St. 523), whereby one-third of such surplus was given to the widow, and the other two-thirds, in equal portions, to the children, of intestate, and, in a case of no children or legal representative of them, one-half to such widow and the other half to intestate's next of kin in equal degree or their representatives, with the provision that no representations be admitted among collaterals after the children of brothers and sisters; that in case there be no wife, then all the said estate be distributed equally among the children; and in case there be no child, then to the next of kin in equal degree and their legal representatives.

According to common-law rules or canons, real property descended to intestate's male issue in preference to his female issue, and where there were two or more males in equal degree, to the eldest, etc., and never lineally ascended. This was known as the law of primogeniture, and which was adopted and applied in the early history of this state. See Locke's Constitution and early cases. By Section 5, Art. 10, of the Constitution of 1790, it was provided that:

"The Legislature shall, as soon as may be convenient, pass laws for the abolition of the rights of primogeniture, and for giving an equitable distribution of the real estate of intestates."

Pursuant to said constitutional mandate, the Legislature passed an Act in 1791 (5 St. 162), abolishing the law of primogeniture, and substituted in its place explicit direction and provision for the distribution of intestates' real estate. This statute appears as chapter 60 in the Gen. Stat. of 1882, wherein it is provided that:

"When any person shall die without disposing of the same by will, his estate, real and personal, shall be distributed in the following manner:" etc. (Section 1845).

—and with minor amendments now appears as Chapter 69 of the 1922 Code. It is thus seen that intestate's real estate and personal property is to be distributed among the same persons, and it may lineally ascend as well as lineally descend. The "next of kin" and "heirs at law" become the *hæredes facti* of the statute of distributions. When it is desired to ascertain who the next of kin or heirs at law of intestate are, it is necessary to resort to the statute of distributions. *Dukes v. Faulk,* 37 S. C., 255; 16 S. E., 122; 34 Am. St. Rep., 745. *Evans v. Godbold,* 6 Rich. Eq., 26. *Seabrook v. Seabrook,* McMul. Eq., 206. *Templeton v. Walker,* 3 Rich. Eq., 550; 55 Am. Dec., 646.

Section 5327 of the Code of 1922 is in part as follows:

"When any person shall die without disposing of the same by will, his estate, real and personal, shall be distributed in the following manner:"

It was strongly urged upon the Court at the hearing by counsel for the Rikard defendants that "any person," as used in the above quotation, is sufficiently broad and comprehensive to embrace illegitimates as well as legitimates; that illegitimates are persons and recognized as such by the law in other respects, and must be so recognized under the said statute. The force of the argument must be admitted, and had that statute been brought before the Court, disassociated and disconnected from the common-law doctrine of descent, it is but reasonable to suppose that it would have been held that bastards came within the language of the

statute.    We must refer, then, to the common law to get the background against which the statute is to be silhouetted.

Section 495, Tiff. Real Property (2d Ed.), contains the following statement of that law:

"At common law, a child born out of wedlock was regarded as *filius nullius,* and as consequently bearing no relationship to any person other than his own offspring.    Consequently he could be the heir neither of his own father or mother, nor of any other person, and no persons could inherit from him except the heirs of his own body."

See, to the same effect, 1 Bl. Com., 459; 2 Kent's Com., 212.

Statute Morton (20 Hen., 111, c. 9), passed in 1235 (adopted in this state in 1712; see 11 St., 418), denied the right to one born before marriage to inherit in like manner as one that is born after marriage, thus expressly refusing to change the laws of the realm, theretofore "used and approved."

Section 41 of 7 C. J. at page 959, is as follows:

"At English common law an illegitimate child was treated as *nullius filius,* and as such incapable of inheriting from either the putative father or mother, and without heirs, except those of his own body.    Except in Connecticut, where a bastard is recognized as the child of its mother, this harsh and inhumane doctrine was taken over into the common law of all American jurisdictions, and still obtains unless expressly changed by statute.    Where, therefore a statute makes use of the word 'children,' it must of necessity be construed to mean such as the law recognized as children; its meaning cannot be so extended as to include illegitimate children, except in Connecticut, and except so far as they are recognized by other statutory provisions.    The same is true where terms of kindred are employed in a statute, unless it appears to be the legislative intention to include in the term 'issue' all who are by law capable of inheriting."

In *Barwick v. Miller,* 4 Desaus., 434, and *Jones v. Burden,* 4 Desaus., 439, it was held that the statute of distribution did not make any changes in the common law, in the rights of bastards, or those claiming under them, and consequently that the mother could not inherit from her illegitimate son, nor a sister or other collateral relative from an illegitimate brother or kinsman, but that upon the death of a bastard intestate none but his lineal descendants are entitled to share in his estate. It was thus clearly decided that a bastard was not embraced in the "any person" class contemplated in the statute. Such a holding was, in no sense, a decision that a bastard was not a person, but that he was not a person with heritable blood. When the Legislature said, "When any person shall die," etc., it meant that *when any person with heritable blood shall die.* It is well established at common law that a bastard could not take by descent from any person, and that no one, except his own lineal descendants, could inherit from him; the Act of 1791 did not change, or even purport to change, that established doctrine. It did not deal with him at all. It only dealt with those whom the law recognized as the source from whom title could flow by descent, and those capable of taking by descent. The bastard, not being able to inherit under the common law, was unable to inherit under the statute. The "blood" relationship specified by the statute is not sufficient to enable one to inherit; there must be in addition the ability to inherit. *McClenaghan v. McClenaghan,* 1 Strob. Eq., 321; 47 Am. Dec., 532. The case of *Rutledge v. Tunno,* 69 S. C., 413; 48 S. E., 297, regarded the law as conclusive upon the point that bastards may not take by inheritance under the statute of distribution. In *McDonald v. Railway,* 71 S. C., 355; 51 S. E., 139; 2 L. R. A. (N. S.), 640, 110 Am. St. Rep., 576, it was said:

"There is no alteration in the last 100 years in the attitude of the Courts of this state to this question. A mother cannot inherit from her bastard child."

It was thereupon held that a mother could not recover under Lord Campbell's Act for the wrongful death of her illegitimate child.

It is manifest, therefore, that if the Rikard claimants are entitled to "inherit," it must be under some statute other than the Act of 1791.

In 1906 the following Act (25 St., 156) was passed:

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, that any illegitimate child or children, whose mother shall die intestate, possessed of any real or personal property, shall be, so far as said property is concerned, an heir or heirs at law as to such property, notwithstanding any law or usage to the contrary.

"Sec. 2. That whenever any illegitimate child shall die in this state, leaving property, real or personal, the mother of such child shall have the same right to inherit from such child as she would have if said child had been legitimate.

"Sec. 3. That in the event of death of such illegitimate child, or the mother of such illegitimate child, by the wrongful or negligent act of another, such illegitimate child, or the mother of such illegitimate child, shall have the same rights and remedies in regard to such wrongful or negligent act as though such illegitimate child had been born in lawful wedlock."

Referring to the above Act in *Crawford v. Masters,* 98 S. C., 458; 83 S. E., 793, Mr. Justice Hydrick said:

"The statute was intended to ameliorate the rigorous policy of the common law with respect to the rights of bastards, which, in modern times, has been thought to visit the sins of the fathers too harshly upon their innocent offspring. It is therefore remedial in its nature, and should be construed liberally."

This Act came before the Court in the case of *Trout v. Burnett,* 99 S. C., 278; 83 S. E., 684; Ann. Cas. 1916-E, 911, for construction, in its application to the following facts: Mrs. McClure, the intestate, whose estate was before

the Court for partition, died in 1910. She had been married three times. By the first husband she had a lawful son; by the second also a lawful son; by the third no children. Between the death of her first husband and the date of her second marriage, she gave birth to an illegitimate daughter, Ella. Ella married a McMillan, and died prior to 1906, leaving three lawful children. The question before the Court for determination was whether or not said children of Ella were heirs at law of their grandmother, Mrs. McClure, and it was held that they were. This case is relied on by claimants to support their contention that the Court, in its construction of the Act of 1906, extended it so as to enable illegitimate children to inherit from their grandmother, although said Act conferred upon them the right to inherit from their mother only, thus showing the tendency of the Court to extend the right of inheritance to include illegitimates whenever possible. Upon examination of the reasoning employed in that case and an analysis of the law therein applied, it will readily be seen that, while it was held that Ella's lawful children were entitled to inherit from their grandmother, it was not held that they were so entitled under the Act of 1906. Subdivision 2 of the first paragraph of the Act of 1791, now embraced in subdivision 1 of Section 5327 of the 1922 Code, provides that:

"The lineal descendants of the testate shall represent their respective parents, and be entitled to receive and divide equally among them the shares to which their parents would repectively have been entitled, had they survived the ancestor."

Had Ella's mother died prior to date of Ella's death, it is clear that Ella could not have inherited from her mother, since she (Ella) was an illegitimate. But had Ella survived her mother, who died in 1910, she would have been entitled to inherit, thanks to the Act of 1906. Her own children, being legitimate, were the representatives of their mother, and as such were entitled to receive and divide among them

the share that their mother, beyond doubt, would inherit. That conclusion appears to be in harmony with the great weight of authority that collaterals who are illegitimate are not entitled to inherit. The opinion does not contain a reference to the *Trout case,* and in no sense appears to have been intended to reverse or even modify it.

No case has been brought to my attention, and I know of none, in this State where collaterals have been held to be entitled to inherit from an illegitimate.

In 1920 the Legislature passed an Act (Acts 1920, p. 1039) amending the Act of 1906 by adding at the end of Section 2, as above quoted, the following:

"And illegitimate children of the same mother shall have the same right to inherit from each other that they would have had they been legitimate; and all children of the same mother, whether legitimate or illegitimate, shall likewise inherit from each other, as to any property, real or personal, inherited from their mother."

Bastards could not inherit at common law, which "harsh and inhumane doctrine" was adopted in this state. Likewise, at common law, no one could inherit from an illegitimate, except his own lineal descendants, which "harsh and inhumane doctrine" was also adopted in this state. No change in this doctrine was made in this state until 1906. The Legislature then knew that a mother could not inherit from her illegitimate child and that a sister could not inherit from her illegitimate brother. Yet the bar was removed as between the mother and illegitimate child only. Not until 1920 did the Legislature confer upon the sister or brother the right to inherit from brother or sister, and then only to a limited extent as between legitimates and illegitimates.

To summarize, the particulars in which the Legislature has conferred the right to inherit to any extent, by and from bastards, are as follows: By Act of 1906 the mother may inherit from her illegitimate child, and such illegitimate child may inherit from his or her mother. By the Act of 1920,

illegitimate children of the same mother may inherit from each other, and all children of the same mother, whether legitimate or illegitimate, may inherit from each other as to property inherited from their mother. Thus far only has the bar to inheriting by law from bastards, imposed by the common law, been lifted by legislative intervention. Beyond this, the Court has not gone and may not go, except in the application of the principle of substitution applied in the *Trout case* and *Glover case*, 124 S. C., 160; 117 S. E., 184.

Finally, it is said that the same blood runs "in the veins" of claimants as ran in those of intestate, and that that blood would not be different had the mother and father of intestate been lawfully married, and therefore there is no reason for denying to claimants the right to succeed to intestate's property, as they are, in fact, the next of kin. However great the cogency of such argument, it is one to be addressed, not to the judicial, but to the legislative mind.

"Next of kin" being a legal term, embracing only those upon whom the law has conferred the right to succeed to property of intestates, I hold that the Rikard defendants are not heirs at law or next of kin of intestate, W. B. Rikard, and therefore not entitled to succeed to his estate, but the same, after the payment of debts, etc., must escheat to the State of South Carolina. It is so ordered, adjudged, and decreed.

We think that the decree of the Probate Judge, dated Feb. 9, 1927, as the *status was at that time,* is entirely correct, except so much thereof as holds that the property of intestate "must escheat to the State of South Carolina." That was not within the jurisdiction of the Court in this proceeding. Such a holding may have been, in the absence of a change thereafter in the status, a legitimate result of his conclusions; but the matter of the *declaration of an escheat is regulated by statute* (Sections 5617 and 5618 of the Code), and does not take place until the procedure therein

prescribed shall have been complied with. The title to the property does not, by the express terms of the statute, become vested in the state until after the expiration of two years, when no claim is set up. Not until then can there be a declaration of escheat. We do not, however, understand that the Probate Judge undertook to declare an escheat. He merely held that the Rikard defendants were not heirs at law or next of kin of the decedent, W. B. Rikard, and were not entitled to succeed to the decedent's property, and as between them and the State of South Carolina, as the law then stood, such property must escheat.

The decree of the Probate Judge was affirmed by an order passed by Judge Featherstone, dated March 11, 1927. On April 8, 1927, the Governor approved Act No. 145, which amended Section 5334 of the Code, providing:

"In the event of the death of any illegitimate, intestate, leaving no one to take under the statute law of this state regulating the descent of property of intestates, as it exists at the date of the passage of this Act, the property of such illegitimate shall descend to and be distributed among the next of kin of such illegitimate on the mother's side as if such illegitimate had been born in lawful wedlock."

We express no opinion as to the effect of this statute upon the right of the State to insist upon an escheat. We only hold that an escheat was not and could not have been declared in this proceeding. That matter must be left for adjudication in the proceedings authorized by Sections 5617 and 5618 of the Code.

The decree of the Circuit Court, as herein explained and modified, is hereby affirmed.

MESSRS. JUSTICES COTHRAN and CARTER and MR. ACTING ASSOCIATE JUSTICE THURMOND concur.

MR. JUSTICE STABLER did not participate.