12825

IN RE JOHNSON'S ESTATE
CARROLL v. SHEPPARD *ET AL.*

(151 S. E., 573)

*Mr. J. Wm. Thurmond,* for appellants,

*Mr. Halcott P. Green,* also for appellants,

*Mr. T. C. Callison,* also for appellants.

*Messrs. C. M. Efird,* and *B. J. Wingard,* for respondents.

February 3, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Olin Johnson, colored, an illegitimate son of Martha Long, who died in 1915, was a soldier in the World War. He died intestate in France in 1918, leaving of force war risk insurance on his life in the sum of $10,000. His maternal grandmother, Eliza Johnson, was the duly designated beneficiary in the policy. She survived Johnson, and thereafter, until her death in July, 1925, received monthly payments of $57.50 under the terms of the policy. In September, 1928, the commuted value of the remaining installments, to wit, $7,353, was paid to J. D. Carroll, Esq., the duly appointed administrator of the estate of the insured.

Olin Johnson was survived by Willie Sheppard, John Tucker, and Maybelle Derrick, his illegitimate brothers and sister, and by Amanda Tucker, Eva Anderson, James Tucker, Polly Davis, George Tucker, Charlie Tucker, and Rufus

Tucker, his legitimate brothers and sisters—all of whom were the children of Martha Long. Olin Johnson, Willie Sheppard, John Tucker, and Maybelle Derrick were born out of wedlock, before the marriage of Martha Long with William Tucker, and the others were born while she was the wife of Tucker.

The only property belonging to the estate of Olin Johnson, in the hands of his administrator for distribution, is the commuted value of the remaining installments of his war risk insurance. The administrator, as petitioner, on October 20, 1928, instituted a proceeding in the Probate Court for Lexington County, against all persons claiming to be heirs and distributees of his intestate for the purpose of determining who are legally entitled to the funds in his hands, so that he might pay out the same to the proper persons and receive his discharge. In pursuance of a summons and order issued, the claimants were called in to file their respective returns setting forth their claims to said funds. The returns filed show three classes of claimants.

I. The other *illegitimate* children of the mother of intestate, who claim they alone are the heirs and distributees of their illegitimate brother, Olin Johnson, and entitled to have the fund distributed in equal shares between them.

II. The *legitimate* children of said mother of the illegitimate intestate Olin Johnson, who claim that they and the illegitimate children of the same mother share equally the funds of the estate.

III. The children and descendants of Eliza Johnson, the beneficiary of the insurance, and maternal grandmother of said intestate, other than the claimants under I and II, above, who claim the funds should be distributed among all the descendants of said Eliza Johnson.

. The Probate Court held that the funds in the administrator's hands for distribution should be paid over in equal shares *per stirpes* to the *legitimate and illegitimate children of Martha Long,* and their descendants as the heirs-at-law

of the intestate, and disallowed the claims of the first and third classes of claimants.

From the decree of the Probate Court, the illegitimate children of Martha Long, class I, *supra,* and also the children and descendants of Eliza Johnson, other than those embraced in classes I and II above, appealed to the Circuit Court, where his Honor, Judge Townsend, on March 30, 1929, affirmed the decree of the Probate Judge.

The parties who appealed to the Circuit Court have now appealed from Judge Townsend's decree to this Court.

The attorneys agree that: "No question of fact is involved in the appeal. The only question is one of law and is: Whether the illegitimate children of Martha Long, the mother of the illegitimate intestate Olin Johnson, are exclusively entitled to the said fund, or if not whether the children of Eliza Johnson have an interest in said funds."

■ Funds paid to the estate of an insured under the War Risk Insurance Acts of Congress are to be distributed among the heirs of the intestate surviving at the death of the insured, and not those surviving the death of the beneficiary named in the policy of insurance. *National Union Bank v. McNeal,* 148 S. C., 30, 145 S. E., 549; *Whaley v. Jones,* 152 S. C., 328, 149 S. E., 841.

Since intestate was an illegitimate, and having died in 1918, the only person who could have inherited from him, under the Act Feb. 24, 1906 (25 St. at Large, p. 156), was his mother. But she died in 1915. Consequently, he had no heirs or distributees, under the law, at that time.

In 1920, the Legislature passed an Act (Acts 1920, p. 1039) amending the Act of 1906, in part as follows:

" * * * And illegitimate children of the same mother shall have the same right to inherit from each other that they would have had they been legitimate." "And all children of the same mother, whether legitimate or illegitimate, shall likewise inherit from each other, as to any property, real or personal, inherited from their mother."

This Act was not retroactive, and could apply only to the estates of persons who died subsequently to its approval, March 12, 1920. Had intestate died after this date, his illgeitimate brothers and sister *only* would have been entitled to the funds in question, since said funds were not inherited by him from his mother.

The Act of 1906, as amended by the Act of 1920, is incorporated in the 1922 Code as Section 5334. This Section was amended in 1927 (Act No. 145, Acts 1927, p. 242) by adding at the end thereof the following:

"In the event of the death of any illegitimate, intestate, leaving no one to take under the statute law of this State regulating the descent of property of intestates, as it exists at the date of the passage of this Act, the property of such illegitimate shall descend to and be distributed among the next of kin of such illegitimate on the mother's side as if such illegitimate had been born in lawful wedlock; and in the event that the next of kin of such illegitimate child on the mother's side die intestate and without leaving anyone to take his property under the statute law of this State regulating the descent of property of intestates as it exists at the date of the passage of this Act, then, and in such event, and before such property escheats to the State, it shall descend to the illegitimate child, or children of the mother through whom the kinship exists."

As pointed out in *Gibson v. Rikard,* 143 S. C., 402, 141 S. E., 726, the right to inherit by and from illegitimates, prior to the Act of 1927, was as follows:

1. Prior to Act of 1906, an illegitimate could inherit from no one, and no one, except his own lineal descendants, could inherit from him.

2. By the Act of 1906 (a) the mother may inherit from her illegitimate child, and (b) such illegitimate child may inherit from his or her mother.

3. By the Act of 1920 (a), illegitimate children of the same mother may inherit from each other, and (b) all chil-

dren of the same mother, whether legitimate or illegitimate, may inherit from each other as to property inherited by them from their mother.

Since his mother died in 1915, the intestate, Johnson, had no one entitled to take at the time of his death in 1918. Had he died subsequently to March 12, 1920, the date of the approval of the Act of that year, and prior to April 8, 1927, the date of the approval of the Act of 1927, the Act of 1920 would have been applicable, and, clearly, his illegitimate brothers and sister would have been his *sole* distributees.

The Act of 1927 would not have been applicable for two reasons: First, it is not retroactive, and, second, intestate would have left *some one* entitled "to take under the statute law of this State," to wit, his illegitimate brothers and sisters, under the Act of 1920.

It seems also clear that the Act of 1927 gave the right of inheritance to "the next of kin of such illegitimate on the mother's side as if such illegitimate had been born in lawful wedlock" *only* in the event that intestate left "no one to take under the statute law of this State regulating the descent of property of intestates," as it existed at the date of the passage of said Act. Had intestate died subsequently to the passage of said Act, to wit, April 8, 1927, he would have left *some one* entitled "to take under the statute law of this State regulating the descent of property of intestates" as it existed on the date of the passage of said Act, to wit, his *illegitimate* brothers and sisters, to whom the right of inheritance was given by the Act of 1920, "the statutory law of this State, regulating the descent of "illegitimate "intestates" at that time.

In 1928, the General Assembly passed an Act (Act No. 616, Acts 1928, p. 1187), approved on the 27th day of February, 1928, Section 1 of which is as follows:

"Be it enacted by the General Assembly of the State of South Carolina: That the provisions of Section 5334, Code of Laws of South Carolina, 1922, Vol. III as amended by

Act known as Act No. 145 of the Acts of 1927, approved April 8, 1927, are hereby declared to apply to all estates of the illegitimates, to the estates of mothers of such illegitimates, and to the estate of the next of kin of such mothers, respectively, as specified in said Section (except such estates of the above specified persons as have vested in possession and been distributed prior to the passage of the Act embraced in said Section so amended which would otherwise be applicable thereto) whether such illegitimates, or the mother, or next of kin through whom, or upon whom such illegitimates shall derive or cast title to such estates, shall have died intestate before or after the passage of the several enabling Acts embraced in said Section; and in no event shall the estate of such an illegitimate escheat to the State of South Carolina except in cases where under like conditions the estate of a legitimate would escheat."

It seems certain that the real intent of that Act was to make retroactive Section 5334 of the Code (which embraced all former Acts on the subject) "as amended" by the Act of 1927. But it made no change in the law as contained in said Section as amended by the 1927 Act. The purpose of the Act of 1928 being to make the law as contained in said Section, as amended by the Act of 1927, applicable to all estates of illegitimates (except such estate of illegitimates as had vested in possession and been distributed prior to the passage of the Acts embraced in said Section and amended by Act of 1927), and the insurance now in the hands of the administrator not having been paid to him until September, 1928, the same were not vested in possession and distributed on the 27th day of February, 1928, the date of the approval of said Act, it follows that the Act of 1928 is applicable to this case, and the distribution of the insurance now in the hands of the administrator must be made in accordance with the law as contained in Section 5334, as amended by the Act of 1927.

Had the Act of 1928 not been passed, it is obvious that the intestate would have had no heirs or distributes to whom the administrator could pay the funds now in his hands. Since the Act of 1928 makes the law as contained in Section 5334 of the Code, as amended by the Act of 1927, applicable to this case, it is necessary to resort to that Section, as amended by said Act, for the purpose of determining to whom the administrator must pay the funds now in his hands.

As we have hereinabove pointed out, the Act of 1920 gave the illegitimate brothers and sisters of intestate *only* the right to succeed to the intestate's estate. The Act of 1927 not giving all the next of kin of the intestate the right of inheritance, *except in the event of the death of intestate leaving no one entitled to take under the statutory law of this State regulating the descent of property of intestates, as it existed at the date of the passage of said Act,* it follows therefore that *only* the illegitimate brothers and sister of the intestate are entitled to receive the funds now in the hands of the administrator.

It is the judgment of this Court that the judgment of the lower Court be modified as herein indicated.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.